### BRIGHT v. BRISCOE. (No. 5789.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1917. Rehearing Denied March 14, 1917.)

1. CANCELLATION OF INSTRUMENTS ☜6 — IMMATERIAL ISSUE.

In an attorney's suit against an administrator to cancel notes on the ground that decedent promised to cancel them in consideration of the rendition of legal services, whether decedent promised to embody his agreement in his will was immaterial.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 4.]

2. FRAUDS, STATUTE OF ☜63(5) — ORAL AGREEMENT TO CANCEL NOTES.

Cancellation of vendor's lien notes could be based on the holder's oral agreement to cancel them, though the cancellation might have destroyed the lien held upon the land, and destroyed the superior title of the holder; the statute of frauds having no application.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 101.]

3. FRAUDS, STATUTE OF ☜63(5)—CANCELLATION OF LIEN NOTES.

Cancellation of vendor's lien notes would not affect the superior title held by the vendor, except in so far as it would form a basis for a recovery of such title in a suit other than the suit to cancel the notes.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 101.]

4. EXECUTORS AND ADMINISTRATORS ☜221(5) — CONTRACTS OF DECEDENT — BURDEN OF PROOF—STATUTE.

In an attorney's suit to cancel his notes held by an administrator on the ground that decedent promised to cancel them in consideration of legal services, decedent's oral agreement to that effect must be clearly and satisfactorily proven; public policy demanding the strict enforcement of Rev. St. art. 3690, providing that in suits by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 903½, 1874, 1876.]

5. WITNESSES ☜159(13)—TRANSACTION WITH DECEDENT.

Under Rev. St. art. 3690, providing that in suits by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, the attorney's testimony that he had never been paid for his services by decedent was inadmissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 681.]

6. APPEAL AND ERROR ☜1053(1)—HARMLESS ERROR—EVIDENCE.

Withdrawal of such testimony, the next morning after it was heard, when it had found a lodgment in the jury's minds which could not be withdrawn by withdrawal of the testimony, did not remedy the harm inflicted; in cases where the testimony is evenly drawn, or where it is uncertain and unsatisfactory, reversal will follow the admission of illegal testimony, though it is withdrawn.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178, 4184; Trial, Cent. Dig. § 977.]

7. WITNESSES ☜140(1)—COMPETENCY—INTEREST—STATUTE.

Under Rev. St. art. 3690, providing that in suits by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify as to any transaction with, or statement by, the testator, intestate, or ward, in an attorney's action against an administrator to cancel notes held by decedent, the interest that a witness and her husband had in maintaining the attorney's claim did not disqualify her from testifying, but went merely to her credibility; the statute applying only to parties.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 598.]

───────

**8. STATUTES ⬤═235—CONSTRUCTION.**

A statute which ingrafts an exception on a general statute must be strictly construed, and will not be extended by judicial construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 316.]

Appeal from District Court, Medina County; R. H. Burney, Judge.

Suit by John T. Briscoe against J. H. Bright, administrator. From a judgment for plaintiff, defendant appeals. Judgment reversed, and cause remanded.

J. F. Carl and R. H. Ward, both of San Antonio, Kercheville & Brown, of Devine, and John H. Bickett, Jr., P. H. Swearingen, Jr., and Geo. G. Clifton, all of San Antonio, for appellant. C. C. Harris, of San Antonio, De Montel & Fly, of Hondo, and Hertzberg & Kercheville, of San Antonio, for appellee.

FLY, C. J. This is a suit by appellee against appellant, administrator of the estate of J. M. Bright, deceased, to cancel certain promissory notes, executed by appellee to said J. M. Bright, amounting in the aggregate to $4,300. It was alleged that deceased had agreed with appellee, in 1914, that, in consideration of legal services rendered by appellee in the past and legal services to be rendered in the future, during the life of said J. M. Bright, he would cancel the indebtedness due by appellee to deceased. Appellee prayed for specific performance and the cancellation of the promissory notes. The cause was submitted to the jury upon one special issue:

"Did J. M. Bright, deceased, on May 28, 1914, in consideration of legal services rendered to said Bright prior to said time, and in consideration of such services to be rendered to said Bright down to the time of his death, by plaintiff, John T. Briscoe, enter into and made (make?) an oral agreement with the said John T. Briscoe wherein the said Bright agreed that he would pay said Briscoe for such legal services by canceling all notes and indebtedness owing by the said Briscoe to said Bright at the time of his, the said J. M. Bright's, decease?"

That question was answered in the affirmative, and judgment was rendered in favor of appellee, as prayed for in the petition.

[1] The first assignment of error is really an attack upon the form of the issue submitted to the jury, although the attack is made through a proposition that the jury did not find that the promise of deceased was, in addition to a cancellation of the notes, to embody the agreement in the will of deceased. The promise to embody the agreement in the will was not of the essence of the suit and was not material. The suit was based on the agreement to cancel the notes. The first and second assignments of error are overruled.

[2, 3] The third and twelfth assignments of error are overruled. The statute of frauds is not applicable to any phase of this case. The cancellation of the vendor lien notes could be based upon an oral agreement, although the cancellation may have destroyed the lien held upon the land and destroyed the superior title of the vendor. This is not a similar or parallel case to those in which an oral agreement has been made to convey an interest in lands. The authorities cited have reference mostly to that class of cases. No one claims that the superior title held by a vendor of land does not remain with him until the purchase money is paid, nor that such title will not pass to heirs, nor that the superior title can be conveyed orally, and the cancellation of these notes would not affect the superior title held by the estate of J. M. Bright, except in so far as it would form a basis for a recovery in another suit of such title. One of the authorities, Atterberry v. Burnett, 130 S. W. 1028, cited by appellant, holds that a verbal release of a vendor's lien, retained in a deed, is valid, if supported by a sufficient consideration, and that such a contract is not obnoxious to the statute of frauds.

[4] In this case the evidence is very unsatisfactory. The law looks with suspicion upon any attempt to prove oral agreements with a deceased person, so much so that it is provided in most, if not all, the states of the Union, as is provided in article 3690, Revised Statutes, that in suits by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate, or ward. In cases like this, any oral agreement to bind an estate must be clearly and satisfactorily proven. Public policy demands the strict enforcement of that statute in the interest of justice and the protection of estates from ruthless spoliation. Dyess v. Rowe, 177 S. W. 1001.

The existence of the contract or agreement upon which this suit is based depends largely upon the testimony of Mrs. A. L. Ray, who admitted that she also had a claim for $1,000 and the home of the deceased, based upon an oral agreement between her and the deceased, and there was evidence to the effect that she had said she intended to swear for appellee and he would help her to recover from the estate. This, if true, would cast suspicion upon her testimony which was uncorroborated, except to a certain extent by her husband. She did not swear that deceased agreed to cancel the notes, but that he said to appellee, "If you will continue to do my work as long as I live, at my death you owe me nothing," and appellee replied: "All right. I will do your work as long as you live." According to this testimony, appellee had, prior to the agreement, been working for deceased for seven years, and had borrowed money from and given notes to deceased. Interest had been paid by appellee to the deceased; land had been bought from him by

appellee, vendor lien notes given, and not one word said about remuneration for the legal services. J. M. Bright was about 85 years old, feeble, and partially blind. No one heard of the contract sued on, although it seems from Mrs. Ray's testimony there had been consultations between her and appellee as to her contract, for she said:

"I knew I was to get title to it (the home). That is what the lawyer told me. That was Mr. Briscoe, I think he said it. No other lawyer told me."

[5, 6] The testimony of appellee, to the effect that he had never been paid for his services by deceased, was inadmissible and calculated to influence the jury. The withdrawal of the testimony the next morning after it was heard, when it had found a lodgment in the minds of the jury which could not be withdrawn by a withdrawal of the testimony, did not remedy the harm inflicted. The fact that an attorney had spent years in laboring for the old man without recompense or reward would doubtless appeal to the sympathy of the jury, and a withdrawal of the testimony would probably not destroy that sympathy. It is difficult to account for the verdict on any other ground, because the evidence presents a case so remarkable as to require the closest scrutiny and investigation. The practice of admitting testimony which is improper and afterwards withdrawing it from the jury is not commended by appellate courts, for we know not what impression the testimony may have upon the minds of the jury. It is true that in some cases the admission of improper testimony, which is afterwards withdrawn, may not be sufficient to cause a reversal; but, in cases where the testimony is evenly drawn or where it is uncertain and unsatisfactory, a reversal will follow the admission of illegal testimony, no matter if it is withdrawn. Railway v. Levy, 59 Tex. 542, 46 Am. Rep. 269; Tucker v. Hamlin, 60 Tex. 172; Smyth v. Caswell, 67 Tex. 567, 4 S. W. 848.

[7] The interest that Mrs. Ray and her husband had in maintaining the claim of appellee would not disqualify her from testifying, but would merely go to her credibility. As said in Gilder v. City of Brenham, 67 Tex. 345, 3 S. W. 309:

"The effect of article 2248 (now 3690) is to except from the operation of the former provision parties to a suit in which the representatives of a decedent or a guardian may be either plaintiff or defendant, in so far as the testimony upon either side relates to any conversation or transaction with the decedent or ward. No mention is made of persons interested in the issue to be tried, and hence they are not excepted from the provisions of the previous article."

The previous article to which reference is made is one which permits parties to a suit to testify. See, also, Howard v. Galbraith, 30 S. W. 689; Barker v. Johnson, 154 S. W. 609; Dicken v. Cruse, 176 S. W. 655; and Peil v. Warren, 187 S. W. 1052.

[8] The reason for the exclusion of the testimony of appellee applies with equal force and cogency to the testimony of Mrs. Ray and her husband, who have a similar claim, under a similar contract, to that of appellee; but the statute confines itself to parties, and the statute which ingrafts an exception on the general statute must be strictly construed and will not be extended by judicial construction. Simon v. Middleton, 51 Tex. Civ. App. 531, 112 S. W. 441.

It will be unnecessary to consider the other assignments of error, none of which we consider well founded.

Because of the admission of the evidence of appellee as to a transaction with deceased, and because the other evidence is unsatisfactory and unconvincing, the judgment is reversed, and the cause remanded.