BRIGHT v. BRISCOE. (No. 5953.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1918. Rehearing Denied March 27, 1918.)

1. SPECIFIC PERFORMANCE ⊛⇒117 — ALLEGATIONS AND PROOF—VARIANCE.

In suit for specific performance of an oral contract of payee, since deceased, to cancel

notes, plaintiff alleged that payee orally agreed with plaintiff that, in consideration of plaintiff having rendered legal services to him in the past, and in consideration of all legal services to be rendered by plaintiff in the future, during the lifetime of the payee, the payee would pay the plaintiff for the same by canceling all notes owing by plaintiff to the payee. The testimony as to the alleged agreement was that the payee stated that, if plaintiff would "continue to pay interest as long as I live, why at my death the notes will be canceled" and that "if you will continue to attend to my business as you have done as long as I live, at my death you will owe me nothing and the notes will be canceled at my death," and that plaintiff responded all right, "I will do the work for you as I have done." *Held,* that there was a fatal variance between the allegations and the proof.

2. CONTRACTS ⬤⟳75(2) — CONSIDERATION — AGREEMENT TO CANCEL OBLIGATION.

An agreement that if attorney, liable on notes to his client, would continue to pay interest on the notes during client's life, such notes would be canceled on client's death, was void, as the attorney was already obligated to pay interest.

3. SPECIFIC PERFORMANCE ⬤⟳28(1) — INDEFINITE CONTRACTS.

An agreement that if plaintiff, as attorney, would continue to attend to business of payee as he had done, notes given by plaintiff to payee would be canceled at. payee's death, was too uncertain to warrant specific performance.

4. SPECIFIC PERFORMANCE ⬤⟳121(1) — CHARACTER OF PROOF—ORAL CONTRACT.

In suit for specific performance of oral contract to cancel notes given by plaintiff, an attorney, to his client, since deceased, it was incumbent on plaintiff to show the terms of the contract with certainty and by .evidence clear and satisfactory.

5. SPECIFIC PERFORMANCE ⬤⟳119—FAIRNESS —BURDEN OF PROOF.

In suit for specific performance of oral contract to cancel notes given by plaintiff, an attorney, to his client, of advanced age, and since deceased, plaintiff, a vigorous young lawyer, had the burden of proving that the contract was fair.

6. SPECIFIC PERFORMANCE ⬤⟳121(11) — ORAL PROMISE—SUFFICIENCY OF EVIDENCE.

Plaintiff must show affirmatively that he comes with clean hands, that the contract was beneficial to deceased, and that plaintiff has performed fully and fairly.

Appeal from District Court, Medina County; R. H. Burney, Judge.

Suit by John T. Briscoe against J. H. Bright, administrator, in which defendant filed a cross-action, making J. W. Fullerton and George Briscoe parties. From the judgment rendered, the administrator appeals. Reversed and rendered.

See, also, 193 S. W. 156.

J. F. Carl and George G. Clifton, both of San Antonio, Mack Kercheville, of Devine, and P. H. Swearingen, Jr., of San Antonio, for appellant. Hertzberg, Kercheville & Thomson, of San Antonio, L. J. Brucks, of Hondo, C. C. Harris, of San Antonio, and De Montel & Fly, of Hondo, for appellee.

SWEARINGEN, J. This suit was instituted by John T. Briscoe, the appellee, against the appellant, J. H. Bright, administrator of the estate of J. M. Bright, deceased, for specific performance of an oral contract, alleged to have been made by appellee and J. M. Bright 11 months before the latter's death. The specific relief prayed for was the cancellation of four notes executed by appellee and owned by J. M. Bright during his life. The dates and amounts of the notes were:

May 28, 1913, for ....................$ 800
October 1, 1913, for ................... 600
April 6, 1914, for ................... 4700
May 27, 1914, for ................... 650

Appellant, by cross-action, sued for judgment for the amount of the notes, and to foreclose vendor's liens securing two of the notes, and for judgment against J. W. Fullerton and George Briscoe, who were made parties to the suit. Judgment was rendered in favor of appellee, canceling his liability on the four notes executed by him in favor of George Briscoe, and in favor of appellant on the cross-action alleged against J. W. Fullerton. Fullerton neither appealed nor cross-assigned error. Appellant gave notice of appeal.

Appellee alleged that he was an attorney at law practicing in Medina county, Tex.; that in 1907 he began practicing law, and the same year began representing J. M. Bright as his attorney upon the representation from J. M. Bright that a goodly portion of the latter's estate would be devised to the former; that for this promised bequest appellee continued to perform services of various kinds for Mr. J. M. Bright until May 28, 1914; the character of the services alleged to have been tendered prior to May 28, 1914, was that of a lawyer, a stenographer, an agent, adviser, collector.

The cause of action alleged was:

"On May 28, 1914, * * * the said J. M. Bright orally agreed and contracted * * * with this plaintiff that, in consideration of the plaintiff having rendered legal services to him in the past, and in consideration of all legal services to be rendered by the plaintiff to him in the future and during the life of the said J. M. Bright, that he, the said J. M. Bright, would pay the plaintiff for same by canceling all notes and indebtedness owing by the plaintiff to said J. M. Bright at the time of the death of the said J. M. Bright."

The petition alleged in full the notes representing the indebtedness of Briscoe to Bright at the time Mr. Bright died.

Appellant answered by general demurrer, special exceptions, general denial, special denials, and pleaded a cross-action seeking judgment for the amount of the notes and foreclosure of vendor's liens securing some of the notes.

J. W. Fullerton and George T. Briscoe answered the cross-action filed by appellee by general demurrer and general denial.

In considering the several assignments questioning the sufficiency of the evidence to. sustain the verdict and the judgment, we will state the facts proven.

The 1st, 4th, 7th, 8th, 9th, 10th, 13th, 14th,

15th, and 16th assignments present various errors of the trial court resulting in the judgment herein, a review of which requires an analysis of the record evidence. J. M. Bright trusted and had great confidence in John T. Briscoe, and frequently saw him from 1907 until March 8, 1915, at which time J. M. Bright died. Mr. Bright was 86 years old at the time of his death. From about March, 1913, at least, Mr. Bright was very feeble, like a child, had to be dressed and undressed and put to bed. Mr. Briscoe was a lawyer. Mr. Bright owned an estate of the value of about $30,000. After March, 1913, Mr. Briscoe, for his own use, borrowed money from Mr. Bright several times, and executed his negotiable notes for the amounts borrowed. In April, 1914, Mr. Briscoe purchased land from Mr. Bright, and executed his note for the purchase money. The payment of a portion of this note was during April, 1914, assumed by J. W. Fullerton.

[1, 2] This is a suit in equity for specific performance, and the contract herein sought to be enforced is oral, and is asserted after the death of Mr. Bright. Death and the law eliminated the testimony of the only two parties to the alleged contract. Only one witness claimed to have heard the conversation that is alleged to have expressed the contract. That witness was Mrs. A. L. Ray, the housekeeper and nurse for Mr. J. M. Bright. When asked by counsel for Mr. Briscoe if she heard a conversation between Mr. Briscoe and Mr. J. M. Bright in reference to a contract between them for Mr. Briscoe to continue doing his business, in 1914, on May 28th, she gave the following testimony:

"Mr. Briscoe came up there to pay some interest on his notes, and he said, 'John, I hate to take this from you, but I have to live; but if you will just continue to pay interest as long as I live, why at my death the notes will be canceled, you will owe me nothing;' and Mr. Briscoe said, 'All right, I will do the work for you,' which he did as long as he lived."

If the above rather unresponsive answer of the witness expressed the real contract between Mr. Briscoe and Mr. Bright, no recovery could be had in this suit by Mr. Briscoe, because the contract thus proven is not the one pleaded, and because such a contract would be nudum pactum and void. Mr. Briscoe had already obligated himself by his notes to pay interest. Jones v. Risley, 91 Tex. 7; 1 Elliott on Contracts, § 215. It will be noticed that this answer is a Mrs. Malaprop version of the following excerpt from Mr. Briscoe's amended petition: "J. M. Bright told" Mr. Briscoe "to look after his interests as long as he lived." Nevertheless, counsel for Mr. Briscoe again asked the witness "whether he said anything in that conversation about Mr. Briscoe continuing to attend to his business as long as he lived;" to which second question witness answered:

"Mr. Bright said, 'If you will continue to attend to my business as you have done as long as I live, at my death you will owe me nothing and the notes will be canceled at my death;' and Mr. Briscoe said, 'All right, Mr. Bright, I will do the work for you as I have done.'"

If the last-quoted answer states the contract, Briscoe cannot recover in this suit, because the contract proven is materially different from the contract pleaded, in this: By the contract proven, the consideration for Mr. Bright's promise to have the notes canceled at his death is the promise by Mr. Briscoe to continue to attend to Mr. Bright's business during the life of Mr. Bright. This contract is wholly executory on the part of both Mr. Bright and Mr. Briscoe. By the contract pleaded, the consideration was in part all the legal services that had been performed by Mr. Briscoe, for and at the request of Mr. Bright, from 1907 to May 28, 1914, seven years' service; the balance of the consideration pleaded was the promise by Mr. Briscoe to render legal services for Mr. Bright during the balance of his life, eight months and eleven days. The fact that Mr. Bright did continue to live for eight months and eleven days after May 28, 1914, the date of the contract conversation, was an exception to the universal experiences of mankind, for it was more than probable that this feeble and helpless man, over 85 years old, would not last so long. Again, the character of service promised to be performed according to the pleaded contract was legal service; whereas the character of service proven was "continue to attend to my business as you have done." The only attention given by Mr. Briscoe to Mr. Bright's business, shown by the record, is that disclosed by the general statement that Mr. Briscoe stepped into the shoes of Mr. Bright, from which it may be inferred that Mr. Briscoe managed the estate generally, and incidentally borrowed money and bought land from Mr. Bright for which he executed promissory notes. Again, it is pleaded that all notes and indebtedness were to be canceled. The proof omits "all," and also omits "indebtedness." The alleged contract is not established by the contract proven.

[3] Furthermore, the contract proven is too vague and uncertain, even if made by men of equal capacity dealing at arm's length, to be enforced, even if asserted, while both are living, by a suit at law instead of equity. The expression, "If you will continue to attend to my business," gives no clear and satisfactory idea of what service was to be rendered by Mr. Briscoe. There is no indication of what Mr. Bright's business was. He may have been a merchant, banker, farmer, stockman, dairyman, or a retired capitalist. The promise to be a business manager does not necessarily bind Mr. Briscoe to represent Mr. Bright in litigation in the courts, nor to examine abstracts of title, nor prepare legal documents. Neither does the promise to attend to Mr. Bright's business bind Mr. Briscoe to act as stenographer for Mr. Bright, as it is alleged he did. The na-

ture and extent of the promised service proven is too indefinite and uncertain. Ward v. Stuart, 62 Tex. 333; 1 Elliott on Contracts, §§ 170–186. The contract proven is furthermore uncertain, in that it furnished no definite designation of what notes are promised to be canceled. The testimony describes them as "the notes." The evidence discloses several notes bearing dates prior to May 28, 1914, the date of the contract conversation. The Supreme Court of Texas has held such reference too vague to renew notes barred by limitation. Cotulla v. Urbahn, 104 Tex. 208–215, 135 S. W. 1159, 34 L. R. A. (N. S.) 345, Ann. Cas. 1914B, 217; 19 Am. & Eng. Enc. pp. 292, 293, and cases therein cited. It is by no means certain that there were not other notes. In fact, one of appellee's witnesses testified that Mr. Briscoe paid interest in December prior to his death. None of the notes in evidence had a credit of that date. There was nothing in the contract testified to that fixed the amount of notes or the amount of the indebtedness that Mr. Briscoe could or would owe to Mr. Bright before Mr. Bright would probably die. Appellee alleged that he had no warning of Mr. Bright's death. Great age and physical helplessness are potent warnings of the end of life. In fact, the evidence before us indicates a growing tendency in Mr. Briscoe for acquiring Mr. Bright's money as Mr. Bright's life was going. In less than two years before the death, money and land to the value of $6,750, or about one-fifth of the estate, were transferred from Mr. Bright to Mr. Briscoe. This would not indicate that no other indebtedness would be incurred. The expression, "You will owe me nothing," does not identify the notes; neither does it prove that any or all notes will be canceled, for that last-quoted testimony is entirely consistent with a bequest which appellee alleged had been promised. That it is uncertain what notes Mr. Bright promised to have canceled at his death is strikingly illustrated by the decree rendered in this suit:

The note dated October 1, 1913, for $600, was a joint note, made by John T. Briscoe and George T. Briscoe. There was no testimony that Mr. Bright promised John T. Briscoe to cancel George T. Briscoe's obligation to pay the note he executed, yet the decree canceled George T. Briscoe's obligation, we presume upon the testimony of Mr. Bright's promise to cancel "the notes."

Again, the note dated May 28, 1913, was a joint note, made by George T. Briscoe and John T. Briscoe. And again it was held that the testimony that "the notes" were to be canceled meant the cancellation of George T. Briscoe's obligation to Mr. Bright by virtue of this $800 note.

The note for $4,700 was executed April 6, 1914, by John T. Briscoe, subsequently one-half of the amount was assumed to be paid by J. W. Fullerton, who by this assumption became a surety only to Mr. Bright for the payment of one-half of the amount of the note, for which John T. Briscoe was bound as principal. As it affected this note, the trial court, by its decree, construed the testimony that Mr. Bright would have "the notes" canceled to mean only one-half the note, and held Fullerton liable for one-half.

On the other hand, the note dated May 27, 1914, for $650, was made by John T. Briscoe, and was payable to George T. Briscoe. Subsequently George T. Briscoe transferred the note to Mr. Bright, and obligated himself to pay the note to Mr. Bright by indorsing the note. The decree held that the testimony that "the notes" would be canceled meant all of this note, and released George T. Briscoe from his obligation.

Thus far we have only considered the certainty and definiteness required by the general rules, tested by which the contract cannot be enforced.

[4] Some of the exceptions to the general rules are that where a lawyer borrows money from a confiding client, or where a dominant party deals with a dependent, a strong man with one 85 years of age, almost blind, and so feeble that he was like a child, and had to be dressed and undressed and put to bed, or where the living attempts to fasten an oral contract upon the estate of the dead, or where the equity power of the court is invoked to decree a specific performance of the oral contract, then, under any one of these conditions or relations, the law requires that all the material terms of the contract be proven with certainty, and by evidence clear and satisfactory, and not merely by a preponderance of the evidence. Bright v. Briscoe, 193 S. W. 156; Dyess v. Rowe, 177 S. W. 1001; Shakespeare v. Markham, 72 N. Y. 400; Walker v. Bohannan, 243 Mo. 119, 147 S. W. 1024; Oliver v. Johnson, 238 Mo. 359, 142 S. W. 274; Edwards v. Norton, 48 Tex. 297; Bracken v. Hambrick, 25 Tex. 412; Note, 44 L. R. A. (N. S.) 740; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483.

We have considered the testimony of only one witness, Mrs. Ray, who alone testified to having heard the agreement made. From that witness we have two distinct contracts proven, one destroying the other, though we have thus far treated them as two parts of one contract, each part supplementing the other as to what Mr. Briscoe promised to do, and merely repeating what Mr. Bright promised would be done. The witness testified to two distinct versions of only one conversation. The record indicates she thought the first version was unsatisfactory to appellee's counsel, and changed to suit, or it is possible her memory rallied to the occasion and the second version was more accurate. This witness seems gifted with this power to rise to the occasion after partial failure, for the record shows that her narrative of the con-

tract conversation given upon the first trial did not contain the statement that Mr. Bright promised that the notes would be canceled. The omission of that sentence was a fatal omission, it seemed to this court upon a former appeal of this case. In her narrative on the second trial, the sentence, "he would have the notes canceled" appears in both versions of the contract. Legitimate suspicion is cast ·upon this gift of the witness by the evidence that she has a claim of an oral contract for services against the Bright estate. The law denies her the privilege of testifying in her suit as it denies Mr. Briscoe the privilege of testifying in his suit concerning statements and transactions with the deceased, but by an anomaly each can testify in the other's suit. Another anomaly of our law is that the jury is never, and perhaps cannot properly be, instructed that the evidence must be clear and satisfactory, and not merely a preponderance. The jury weighs the testimony for a preponderance only; we must find it clear and satisfactory.

The testimony of Mrs. Ray, which we have been discussing, is corroborated in most of its essential details by her husband, Mr. A. L. Ray, who testified that he had a conversation on the evening of May 28, 1914, after the conversation between Mr. Bright and Mr. Briscoe overheard by his wife. Mr. Ray on his direct examination merely stated that Mr. Bright wanted Mr. Briscoe to pay interest as long as Mr. Bright lived, and wanted Mr. Briscoe to work for him, and wanted to have the notes canceled. He was sure Mr. Bright did not say Mr. Briscoe would not owe him anything, and was sure Mr. Bright said he wanted to cancel the notes. However, on cross-examination, this witness testified that Mr. Bright told witness what Mr. Bright had said to Mr. Briscoe and this narrative corroborated the testimony of Mrs. Ray as to the terms of the contract, except that it did not prove that Mr. Briscoe accepted the promise of Mr. Bright. The corroborating witness added nothing to the certainty of the contract testified to by his wife, but merely added his credibility to hers. Other witnesses testified to casual statements made by Mr. Bright, but none added clearness or definiteness to the terms of the contract proven by Mrs. A. L. Ray, and need not be further discussed

[5] The evidence proves a contract at variance with the contract pleaded, and the evidence proves a contract too vague and uncertain to be enforced. More than this, the evidence fails to prove that the contract was fair to Mr. Bright, and, in order to be enforced, the burden rested upon Mr. Briscoe to prove affirmatively that it was fair, in order to avoid the presumption of fraud which the evidence in the record creates against him, in that it discloses that he was a vigorous young lawyer, and the trusting friend with whom he contracted for his own benefit was an aged, helpless, and dying man. The record shows that Mr. Briscoe claimed

$6,750 from Mr. Bright's estate, but the evidence, with painful silence, gives no idea what Mr. Bright received for this fifth part of his estate.

[6] Yet again the evidence fails to prove affirmatively that the contract between Mr. Briscoe and Mr. Bright, whether vigorous young lawyer and aged client, or trusted agent and helpless principal, was beneficial to the childish old man, and the law requires that contracts between parties occupying such fiduciary relationships be proven by a preponderance of the evidence to be beneficial to the decrepit one, be he client or principal. 1 Elliott on Contracts, §§ 152, 153. And still again, this is a suit for specific performance, and equitable remedy, therefore the evidence must show affirmatively that Mr. Briscoe comes with clean hands, and must show that the contract was definite, fair, and beneficial to deceased, and must also show clearly and satisfactorily that Mr. Briscoe performed fully and completely all of the services which he promised to perform. 36 Cyc. 544; Ward v. Stuart, 62 Tex. 333; 9 Cyc. 601.

The only evidence of performance after the contract is that Mr. Briscoe often visited Mr. Bright; and the general statement by witnesses, who are not shown to have known anything about the facts, that Mr. Briscoe worked for Mr. Bright after the date of the contract. The testimony of Mrs. Ray that Mr. Bright, a short while before he died, told her that in the event he did not live to make his will, to testify that Mr. Briscoe owed him nothing, does not prove that Mr. Briscoe performed all the services up to the time of the death of Mr. Bright that Mr. Briscoe had promised to perform. The foregoing are a few of the reasons that induce us to sustain the 1st, 4th, 7th, 8th, 9th, 10th, 13th, 14th, 15th, and 16th assignments.

The 2d, 3d, 5th, 6th, 11th, and 12th assignments present the same legal propositions that were overruled on the former appeal of this case, and for the reasons therein stated are again overruled.

The judgment in favor of appellant against J. W. Fullerton is not appealed from, and is correct, except in so far as it may be affected by the rendition of judgment in the same cause of action against John T. Briscoe. The judgment rendered in favor of John T. Briscoe is in all respects reversed, and this court, proceeding to enter such judgment as the trial court should have entered, adjudges that John T. Briscoe take nothing by his suit for specific performance, and that appellant recover against John T. Briscoe, George T. Briscoe, and J. W. Fullerton the debts sued upon by him in his cross-action and for foreclosure of liens as therein prayed for. The costs of appeal are adjudged against John T. Briscoe and George T. Briscoe, and all costs of the trial court are adjudged against John T. Briscoe, except those incurred by reason of the cross-action in so far as it affects Fullerton and George T. Briscoe,

which are respectively adjudged against said parties.

Reversed and rendered.