## BRISCOE v. BRIGHT'S ADM'R.
### (No. 181–3214.)

(Commission of Appeals of Texas, Section B. June 15, 1921.)

**1. Specific performance ⊂⇒117—Variance between pleading and evidence held not material.**

Where plaintiff, an attorney, alleged a verbal agreement on the part of deceased to cancel certain notes in consideration of "legal services theretofore and thereafter to be rendered" by plaintiff, and the evidence showed such promise if plaintiff would continue to do decedent's work as he had done, as long as decedent lived, there was no material variance between the allegations and the proof.

**2. Contracts ⊂⇒346(10)—Rule as to variance stated.**

Where, eliminating every allegation not substantially supported by evidence, and eliminating all proof not fairly alleged, there is left sufficient evidence of a contract which meets the requirements of law, it cannot be said there is not sufficient evidence to support a judgment for the plaintiff on the issue as to whether the contract was made as alleged.

**3. Appeal and error ⊂⇒930(1) — Evidence viewed most strongly in support of judgment.**

Treating the question as to the sufficiency of the proof to clearly and satisfactorily establish the contract as one of law, only, the evidence must be viewed most strongly in support of the trial court's judgment in favor of the contract.

**4. Appeal and error ⊂⇒994(2)—Credibility of witnesses not question within province of Commission of Appeals.**

That the witnesses may not have been disinterested or may have made conflicting statements, or that their credibility may have been attacked, are matters solely within the province of the jury subject to revision by the trial judge and Court of Civil Appeals, and are not matters with which it is the province of the Commission of Appeals to deal on appeal from the Court of Civil Appeals.

**5. Specific performance ⊂⇒121(1) — When proof of terms of oral contract sufficient stated.**

It is only essential that the terms of an oral contract with a decedent to cancel notes in consideration of services be shown by evidence sufficiently clear for the court to determine what those terms were, without resorting to inference or conjecture.

**6. Appeal and error ⊂⇒1083(6)—Reversal and rendition of judgment by Court of Civil Appeals held ruling on law and not on facts.**

Where the Court of Civil Appeals on appeal from a judgment for plaintiff rendered judgment for defendant and did not exercise its province to determine the facts and order another trial because of its difference with the jury on the facts, its ruling is one purely upon the question of law whether there be any evidence under the required quantum of proof which will support the jury's finding.

**7. Specific performance ⊂⇒121(4)—Evidence held sufficient to support finding.**

In suit for specific performance of an oral contract by payee, since deceased, to cancel notes in consideration of legal services, evidence *held* sufficiently clear, strong, cogent, satisfactory, and convincing to support the jury's finding that such a contract was made.

**8. Appeal and error ⊂⇒842(7)—Facts held not to warrant holding, as a matter of law, that contract was procured by undue influence.**

Where the issue of undue influence by an attorney in procuring a contract with a client was not submitted to the jury, and no request for submission was made, and deceased was in full possession of his faculties and was competent to make a contract, and there was evidence to support a finding that he voluntarily made it, it could not be held by Court of Civil Appeals as a matter of law that the contract was procured by undue influence and was therefore nudum pactum.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by John T. Briscoe against the administrator of the estate of J. M. Bright, deceased, and cross-action by the defendant. Judgment of the Court of Civil Appeals (202 S. W. 183) reversing the trial court's judgment for the plaintiff, and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

C. C. Harris, of San Antonio, De Montel & Fly, of Hondo, and Hertzberg, Kercheville & Thomson, of San Antonio, for plaintiff in error.

J. F. Carl, of San Antonio, for defendant in error.

McCLENDON, P. J. This action was brought by John T. Briscoe against the administrator of the estate of J. M. Bright, deceased, to cancel certain notes which plaintiff had executed in favor of the deceased during his lifetime, upon the ground that the deceased had made a verbal contract with plaintiff to the effect that if the latter would attend to the business of deceased for the rest of his life, as he had theretofore done, deceased would cancel all notes owing to him by plaintiff at the time of his death. Defendant by way of cross-action sought judgment against plaintiff upon the notes. The case was tried twice, each of which trials was by jury and upon one special issue only—whether the contract was made as alleged—and upon each trial judgment was rendered for the plaintiff upon favorable answer to that issue. Appeal from the first judgment resulted in its reversal and a remand of the cause for further trial upon the holding, among others, that the evidence was not of sufficient certainty and clearness to support recovery. 193 S. W. 156. On the

last appeal the Court of Civil Appeals, upon like holding as to the sufficiency of the evidence, reversed the trial court's judgment and rendered judgment that plaintiff take nothing and that defendant recover upon his cross-action. 202 S. W. 183.

The cause was presented in the Court of Civil Appeals upon 16 assignments of error, 10 of which were sustained by that court, and the remaining 6 overruled. The latter need no mention for the reason that they are not brought before the Supreme Court for review by any assignment or cross-assignment of error. The 10 assignments sustained by the Court of Civil Appeals, eliminating duplications, may be grouped under the three following holdings of that court:

(1) That there was a variance between the contract declared upon and the contract proved.

(2) That the evidence was not of that clear, strong, cogent, satisfactory, and convincing character required to support a judgment in cases of this character.

(3) That the relation of plaintiff to deceased being that of attorney to client, and therefore confidential and fiduciary, and deceased being aged and infirm, the contract was unfair, unreasonable, and procured by undue influence, which rendered it nudum pactum.

We will state only sufficient of the pleadings and evidence to make clear our conclusions upon these holdings.

Plaintiff alleged that, beginning with the year 1907, when he began practicing law, and up to the 28th day of April, 1914, he had attended to all of deceased's business, during which time he had received no compensation for his services. That on the date last named—

"the said J. M. Bright orally agreed and contracted * * * with this plaintiff that in consideration of the plaintiff having rendered legal services to him in the past, and in consideration of all legal services to be rendered by the plaintiff to him in the future and during the life of said J. M. Bright, that he, the said J. M. Bright, would pay the plaintiff for same by cancelling all notes and indebtedness owing by plaintiff to said J. M. Bright at the time of the death of said J. M. Bright."

The notes sought to be canceled were specifically described in the petition.

It was shown that at the time of making the alleged contract deceased was very old and infirm. He had no family of his own, and all his heirs-at-law lived in another state. Plaintiff had transacted all of deceased's business for a number of years and continued to do so up to the time of his death, which occurred some eight or more months after the alleged contract was made. There was no evidence that deceased ever paid plaintiff anything for any service rendered. The witnesses who testified in support of plaintiff's allegations were Mrs. Adelia Ray and her husband, A. L. Ray, Mrs. C. G. Newcomb, John H. Snyder and J. C. Stroud. Mrs. Ray had been housekeeper and nurse for deceased for about seven years prior to his death. She married A. L. Ray about two years before deceased's death, and they both lived with deceased during those two years. Mrs. Newcomb had also been a housekeeper for deceased. Mrs. Ray gave the following testimony:

"As to what conversation I heard between Mr. Bright, before his death, and Mr. Briscoe, with reference to the contract between them, for Mr. Briscoe to continue doing his business, in 1914, on May 28th, Mr. Briscoe came up there to pay some interest on his notes, and he said, 'John, I hate to take this from you, but I have to live, but if you will just continue to pay interest as long as I live, why at my death the notes will be canceled, you will owe me nothing,' and Mr. Briscoe said, 'All right, I will do the work for you.' Which he did, as long as he lived."

"As to whether he said anything in that conversation about Mr. (Briscoe) continuing to attend to his business as long as he lived, he did; Mr. Bright said, 'If you will continue to attend to my business, as you have done, as long as I live, at my death you will owe me nothing and the notes will be canceled at my death,' and Mr. Briscoe said, 'All right, Mr. Bright, I will do the work for you as I have done.'

"Mr. Bright told me before he died that if he never lived to make a will, he wanted me to testify after his death that Mr. Briscoe would not owe him anything, that the notes would all be canceled and Mr. Briscoe would not owe him anything.

"Mr. Bright did not say anything about who would testify to establish my claim; he didn't tell me who would do that.

"As to what Mr. Bright's exact words were on that occasion to Mr. Briscoe, I don't remember. Mr. Briscoe came to pay the interest on his notes, and he said, 'John, I hate to take this from you, but I have to live, but if you will continue to do my work for me, as you have done, as long as I live, at my death the notes will be canceled and you owe me nothing,' and Mr. Briscoe said, 'All right, I will,' Mr. Briscoe said, 'All right, Mr. Bright, I will do the work for you, attend to your business for you, as I have done, as long as you live.' Mr. Bright said, 'The notes will be canceled and you will owe me nothing at my death.' I am sure that he said that he would cancel those notes."

The following is from the testimony of Mr. Ray:

"As to having a conversation myself with Mr. Bright with reference to an understanding between Mr. Bright and Mr. Briscoe, I did. Mr. Briscoe had been up there, I think it was in May, 1914; I don't know what day of the month it was. He had been up there to pay some interest on some notes, and Mr. Bright had a conversation with Mr. Briscoe in the presence of my wife, and that evening, that night after supper, we were out on the front porch, sitting

out there, and he went over the matter. He told me what he had told Mr. Briscoe. He said that he wanted Mr. Briscoe to continue attending to his business, and he wanted him to pay interest on those notes as long as he lived and that at his death the notes would be canceled. These were notes that were due by Mr. John T. Briscoe to Mr. J. M. Bright. This conversation occurred at Mr. Bright's house after supper, out on the front porch."

Mrs. Newcomb testified:

"As to when I saw Mr. Briscoe pay Mr. Bright some interest on some notes, that was in December, before Mr. Bright died, which was in March.

"As to what conversation took place between them at that time, when he took the money, Mr. Bright said, 'I hate to take it, but I have to live.' That is what he said. He told me that he hated to take the money from John, as he always called him, but, of course, he had to live. He said John was a good fellow, and I don't know what all he didn't say, like that; he went on praising him like that, how he had helped him."

Snyder testified:

"I knew Mr. J. M. Bright during his lifetime. I also know Mr. John T. Briscoe. Mr. Bright died in March, 1915. I was living there at the time of his death.

"As to whether I ever visited Mr. Bright at his home before his death, I went there in 1914, and brought him some plums. When I went there he said, 'Get down and come here, I want to talk to you.' Then I stopped and talked a while and said, 'Mr. Bright,' I said, 'You are getting old to attend to your business.' 'Well,' he said, 'I have turned it over to John T. Briscoe, turned it over to him. He will attend to my business as long as I live here. I made a contract with him.' That is so. Mr. Bright said, 'I will pay him well for it after my death.' That is what he said. That was the first of June, 1914."

Stroud testified to a conversation with deceased in which the latter said:

" 'John don't owe me nothing on the lots,' and he said, 'When I go down to my grave, John Briscoe's debts go down in the grave with me; but he won't owe me nothing when I am dead.' "

[1, 2] We do not think the evidence of the contract proved was materially variant from that alleged. The only respect in which a variance is claimed which in our opinion deserves mention is that with reference to the character of services which constituted the consideration for the promise to cancel plaintiff's notes. Those services as alleged were "legal services theretofore and thereafter to be rendered," whereas, the language of deceased testified to was, "if you will continue to do my work for me, as you have done, as long as I live," and, "If you will continue to attend to my business, as you have done." The Court of Civil Appeals, in sustaining the contention that there was a fatal variance between the allegations and proof, say:

"The only attention given by Mr. Briscoe to Mr. Bright's business, shown by the record, is that disclosed by the general statement that Mr. Briscoe stepped into the shoes of Mr. Bright, from which it may be inferred that Mr. Briscoe managed the estate generally, and incidentally borrowed money and bought land from Mr. Bright for which he executed promissory notes."

Accepting this general statement as substantially correct, still the record does not necessarily present a case of variance. Deceased's property consisted largely, if not entirely, in lands, in the handling of which the services of an attorney were essential. Whether all the services performed by plaintiff fell strictly within the designation of legal services, we think is not material. No assignment of error was made predicated upon objection to this testimony upon the ground of variance. The contract being verbal, it was not essential that it be proved in the exact language alleged. It was only necessary to allege a valid contract sufficiently clear in its terms to enable the court to determine what those terms were, and that the contract proved be of like clearness. In other words, eliminating every allegation not substantially supported by evidence and eliminating all proof not fairly alleged, if there be left sufficient evidence of a contract which meets the requirements of the law, then the objection of variance between the allegations and the proof, arising, as it does, upon the sufficiency of the evidence to support the judgment, should be overruled.

[3-6] The sufficiency of proof to meet the requirement that it should clearly and satisfactorily establish a contract which the courts can enforce is presented here only as a question of law. Conceding for the purposes of this case that the contract sought to be enforced falls within the rule requiring that its terms be proved clearly and satisfactorily and treating the question as one of law only, the evidence must be viewed most strongly in support of the trial court's judgment. The fact that the witnesses who testified may not have been disinterested, or may have made conflicting statements, or that their credibility may have been attacked, are matters with which it is not our province to deal. As we understand the rule contended for, it is not violated by objections to the evidence of this character. It only requires that the terms of the contract essential to recovery be supported by evidence sufficiently clear for the court to determine what those terms were without resorting to inference or conjecture. In this, as in every other class of cases that we now recall, the credibility of the witnesses and the weight to be given to their testimony are questions solely within the province of

the jury, subject, however, to be revised by the trial judge and the Court of Civil Appeals. The latter court might have reviewed the facts, set aside the verdict of the jury, and remanded the cause for further trial; but that court has not "sought to exercise its province in determining the facts and ordering the case remanded for another trial because of its difference with the jury on the facts," but has rendered judgment for defendant. Its ruling is therefore one purely upon a question of law—whether there be any evidence under the quantum of proof required which will support the jury's finding. Tweed v. Telegraph Co., 107 Tex. 255, 166 S. W. 696, 177 S. W. 957.

[7] We think the testimony of Mrs. Ray concerning the conversations which took place in her hearing between plaintiff and deceased was sufficiently clear and certain to meet the requirements of the rule invoked. She was not disqualified by law from testifying, and whatever doubt might be cast upon her testimony addressed itself to the jury as affecting her credibility. The other witnesses whose testimony has been quoted were corroborative of Mrs. Ray, and the jury may have regarded the surrounding circumstances as affording further corroboration. The issue submitted to the jury, and answered by them in the affirmative, was:

"Did J. M. Bright, deceased, on May 28, 1914, in consideration of legal services rendered to said Bright prior to said time and in consideration of such services to be rendered to said Bright down to the time of his death by plaintiff, Jno. T. Briscoe, enter into and make an oral agreement with the said John T. Briscoe wherein the said Bright agreed that he would pay the said Briscoe for such legal services by canceling all notes and indebtedness owing by the said Briscoe to the said Bright at the time of his, the said Bright's decease?"

Our conclusion is that there was sufficient evidence under the rule contended for to support the finding embodied in that issue.

[8] With regard to the finding of the Court of Civil Appeals to the effect that the contract was procured by undue influence and was therefore nudum pactum, we think it only necessary to state that this issue was not submitted to the jury and no request for its submission was made. While it is true that plaintiff occupied toward deceased the relation of attorney, and this fact might require that the transaction be examined with more than ordinary scrutiny, nevertheless, the evidence does not present a case in which it could be held as a matter of law that the contract was unfair, that the deceased was overreached, or that undue influence or pressure was brought to bear upon him. So far as the record shows, deceased was in full possession of all his faculties and was entirely competent to make the contract. The evidence will support a finding that he voluntarily made the contract without the exertion of any influence or persuasion. In fact, the evidence supports the inference that the deceased was anxious to make the contract in order that he might have the full benefit of the interest and income from his property during his life and not be required to pay his obligation to the plaintiff until his death.

We conclude that the judgment of the Court of Civil Appeals should be reversed and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.