George CLOWER, as Temporary Administrator of the Estate of Matt Chadwell, Deceased, Appellant,

v.

Albert R. BROOKMAN and Wife, Cora E. Brookman, Appellees.

No. 13476.

Court of Civil Appeals of Texas.

San Antonio.

June 10, 1959.

J. R. Sorrell, Atlee McCampbell, Corpus Christi, for appellant.

L. L. Gragg, Corpus Christi, for appellees.

POPE, Justice.

Plaintiffs, Albert R. Brookman and wife, Cora E. Brookman, sued and recovered judgment for $4,000 against the Estate of Matt Chadwell on a contract for personal services rendered Matt Chadwell and his wife, Benia Chadwell, during their lifetime. There was no jury. The estate denied that Chadwells made a contract to pay the plaintiffs out of their estate, and claimed (1) that a suit based upon quantum meruit was barred by the two-year statute of limitations; (2) that the trial court grounded is judgment upon conflicting conclusions of law—not fact; and (3) that the Chadwells fully performed any contract to pay plaintiffs.

The findings by the court show that Matt Chadwell and his wife were both aged. They owned some tourist cottages in Corpus Christi adjacent to the property owned by plaintiffs. Brookmans were not related to the Chadwells and both families lived in their own homes. From 1951 to May, 1956, the Chadwells were so infirm and ill that they were unable to care for themselves or their property. From 1954 to her death in July, 1956, Mrs. Chadwell was confined to her bed and a wheel chair, with a broken hip. Plaintiff Brookman managed the Chadwell courts, rented the cottages, kept records, made bank deposits, and maintained and repaired the property. Brookman and his wife took care of the Chadwells, did their buying, cooked for them, washed their clothes, drove them places in their automobile, and cared generally for them. Mrs. Brookman bathed Mrs. Chadwell, put her to bed, changed her bed, cleaned the Chadwell cottage, and acted as a nurse.

The first two points were brought forward in a single point but, in the interest of clarity, we shall discuss them separately.

■ Plaintiffs alleged that Chadwells on or about December, 1951, expressly agreed to pay them a reasonable compensation for performing the services sued upon. They also alleged that at times thereafter Chadwells repeated their agreement to compensate plaintiffs out of their estate, upon the death of the survivor, and that Chadwells knowingly accepted plaintiffs' services. Alternatively, they pleaded for recovery upon quantum meruit. In our opinion the case turns upon the existence of a contract to pay the plaintiffs. We observe at the outset that there was no family relationship between the plaintiffs and Chadwells. They did not live in the same household, but each family lived separately in adjoining houses. 3 Corbin on Contracts, § 566. Further, this is a suit for recovery of money and not for the recovery of real estate, and the promise sued upon is not that the Chadwells would make a will devising money or property to plaintiffs. Hence the statute of frauds as a defense does not enter the case with respect to the adequacy of proof of the claimed contract. See Henderson v. Davis, Tex.Civ.App., 191 S.W. 358.

■ Whether plaintiffs proved a contract involves two problems. The first is whether they proved the elements of a contract at all, and the second is whether they proved it by full and satisfactory evidence. There was proof that Matt Chadwell agreed to pay plaintiffs the reasonable value of their services. Several witnesses testified that Matt Chadwell had told them or had stated in their presence, that he was obligated to pay for the services rendered by the Brookmans, and that their services were not gratuities. Helen Turpin, a disinterested witness, testified:

"Q. Did you ever hear Mr. Chadwell say anything about any arrangements he had with Mr. and Mrs. Brookman to pay them for their services? A. Yes, on several occasions.

"Q. What did you hear Mr. Chadwell say? A. That he would see that they would be well paid out of his estate, as agreed, after his death. I

heard him say several times that they would be well taken care of."

Chadwell admitted and acknowledged to witness Joe Cantu that he owed Brookman and that the Brookmans were to be paid. He told Cantu in Brookman's presence that he "would take care of it later," "that he would take care of Mr. and Mrs. Brookman later." Chadwell said in the presence of plaintiff's brother, another witness, "Albert (plaintiff), some of these days you will be paid for everything you have done for us," and, again, "Mr. Brookman, you have helped I and Benia and some of these days I will see that you are paid for what you have done." Earl Howell, another witness, testified:

"Q. Did you ever have any conversation with Mr. Matt Chadwell, in which the subject matter came up as to Mr. and Mrs. Brookman with relation to that and the work they did for him and the settlement? A. Yes, on one occasion I did, surely did. * * *

"Q. Did they say anything about paying Mr. Brookman for his work or how he was to be paid? A. Yes. He gave me to understand that Mr. Brookman would be paid for that.

"Q. When did he say that he would be paid? A. The understanding that he left was that it would come out of his estate.

"Q. Did he say that he was going to pay them anything for their services? A. Yes sir. I have known the old man quite well and talked to him several times, and he did not want anybody to do anything for him unless he paid for it.

"Q. He expressly stated at that time that he was going to pay Mr. and Mrs. Brookman for their services? A. Yes, he surely did."

From this evidence, Chadwell recognized that he owed plaintiffs money for their services, acknowledged to several witnesses that he would pay the obligation, and that "as agreed" Brookmans would be paid out of his estate after his death. This is testimony of an express contract to pay Brookmans. It disproves any idea of gratuitous services or of services rendered upon mere expectation but without a contract.

"In innumerable cases, courts have been required to determine whether one who has received services rendered by another ever made a promise to pay for them. The question is perhaps the more difficult when the claim is asserted after the death of the one receiving the service. The claimant can win by introducing convincing evidence of a promise expressed in words. Frequently, however, the only admissible evidence that such a promise was made is the conduct of the parties and surrounding circumstances. Thus the question is as to whether such conduct and circumstances justify the inference of a promise to pay. They may justify such an inference even though no promise in words was ever made, * * *." 3 Corbin on Contracts, § 566.

"The existence of an oral contract may be proved by circumstantial evidence as well as by direct evidence." 10–A Tex.Jur., Contracts, § 318; Clem v. Forbess, Tex. Civ.App., 10 S.W.2d 223; Cheatham's Ex'r v. Parr, 308 Ky. 183, 214 S.W.2d 95; Peters v. Poro's Estate, 96 Vt. 95, 117 A. 244, 25 A.L.R. 615; 58 Am.Jur., Work and Labor, § 2; 17 C.J.S. Contracts § 593. The elements of a contract were therefore proved as found and concluded by the trial court.

■ The estate further attacks the validity of the contract because it was not proved by full and satisfactory evidence. In suits against an estate for personal services, because one of the contracting parties is dead, the quantum and quality of the proof must be full and satisfactory.

Henderson v. Davis, Tex.Civ.App., 191 S.W. 358; Dyess v. Rowe, Tex.Civ.App., 177 S.W. 1001. As already outlined, plaintiffs were under no moral obligation to the Chadwells, were not related to them, and they faithfully performed necessary services over a period of many years. The fact that their services were appreciated by the Chadwells does not transform the services into a gratuity, for many faithful employees, while paid, are still valued and appreciated.

By comparing the nature of the evidence in this case with that which has been held either sufficient, on the one hand, or insufficient on the other, to satisfy the "full and satisfactory" rule, we conclude that there was enough proof to sustain the court's findings and conclusions. The opinion of the Commission of Appeals in Briscoe v. Bright's Adm'r, 231 S.W. 1082, sets forth evidence which met the full and satisfactory test. It, like here, consisted of testimony by persons who had heard the decedent make acknowledgment of an agreement and its terms, which testimony was corroborated by other witnesses and circumstances. The legal test was satisfied by the proof, and the court upheld the contract. Cf. Bright v. Briscoe, Tex.Civ.App., 202 S.W. 183; Bright v. Briscoe, Tex.Civ. App., 193 S.W. 156. Harrell v. Walsh, Tex.Civ.App., 249 S.W.2d 927, strongly relied upon by appellant, presents situations not present in this case. The relationship which there existed between the persons was one purely of gratuitous services received by an appreciative person. The Court held that philanthropy, frequently avowed during life, was not transformed into a contract for hire, after death. There also the contract was barred by both the statute of frauds and by limitations.

■ Brookmans' action was not barred by limitations. The contract was that Matt Chadwell would pay plaintiffs out of the Chadwell Estate. Chadwell died on September 20, 1957, and this suit was filed on July 31, 1958. Most of appellant's argument is based upon the reasoning that recovery could not be based upon a contract, but was grounded upon quantum meruit, in which instance, limitations would run from the time of performance. If that were the case, much of the claim would be barred, but the judgment, as discussed, is grounded instead upon a contract to pay out of the estate. Scott v. Walker, 141 Tex. 181, 170 S.W.2d 718, 720; Henderson v. Davis, Tex.Civ.App., 191 S.W. 358, 361.

■■ Appellant complains that the trial court inconsistently concluded that plaintiffs could recover upon contract, and also upon quantum meruit. The trial court concluded that plaintiffs might win on either theory. It is true that an express contract and quantum meruit are distinct and different relationships. The ideas are inconsistent. Nystel v. Gully, Tex.Civ.App., 257 S.W. 286, 288. But it is also true that the same record may contain evidence which will support either theory. The plaintiffs pleaded alternatively both theories. "It is no objection that the plaintiffs sought to recover both upon an express contract and upon quantum meruit. They might allege both, and recover as the evidence might show." Fant v. Andrews, Tex.Civ.App., 46 S.W. 909, 910. While one may not allege the one and recover on the other; one may allege both and recover on either, if it is proved. The court found and concluded that there was an express contract, which we have approved. "If we are to indulge any presumptions in such a situation, they will be those which tend to support the action of the court below." Johnson Aircrafts v. Eichholtz, Tex.Civ. App., 194 S.W.2d 815, 816. In other words, the presumption is that the court rendered its judgment upon the express contract, which was enough for plaintiffs' recovery. "If two independent grounds of recovery are relied upon, the judgment will be affirmed if one ground is established." 3–B Tex.Jur., Appeal and Error, § 875.

Appellant objects also to the judgment on the grounds that Chadwell fully complied with the agreement to pay plaintiffs, if in fact he made such an agreement. The basis for this argument is that Chadwell by will bequeathed $1,000 to Brookmans. At the time of trial, the will had not been admitted to probate and a contest was pending, filed by persons not parties to this suit. Whether the bequest was in fulfillment of a contract to pay Brookmans a reasonable compensation for performing services, brings us again to the terms of the contract. Brookmans sued upon a contract with Chadwell to pay out of the estate the reasonable value of the services rendered by Brookmans. The contract between Brookmans and Chadwell did not repose in Chadwell the sole determination of the reasonable value of the services. The trial court found that $4,000 was usual, customary and reasonable. By another finding, the trial court also found that $5,000 was reasonable, but no cross-points complain of the judgment for the lesser amount. The reasonable value of the services was a matter of proof and not a unilateral decision for one of the parties to the contract. See Gray v. Cheatham, Tex. Civ.App., 52 S.W.2d 762; 58 Am.Jur., Work and Labor, § 10.

We have studied the several other points brought forward by the estate, but find them without merit. We find that there was ample proof of the reasonable value of the services rendered. Objections were made to the admissibility of evidence in violation of Article 3716, Vernon's Texas Civ.Stats. Many objections to such evidence were sustained. Other evidence was admitted only in proof of a bill of exception, but it is not clear when the bill began and stopped. Some evidence was probably improperly admitted, but since there was sufficient evidence to support the trial court's decision, and the case was tried before the court, we regard any improperly admitted evidence either as disregarded by the court or harmless. Garza v. De Leon, Tex.Civ.App., 193 S.W.2d 844;

Prichard v. Farmers Co-op. Soc. No. 1 of Merkel, Tex.Civ.App., 183 S.W.2d 240; Pruett v. First Nat. Bank of Temple, Tex. Civ.App., 175 S.W.2d 658.

The judgment is affirmed.