**HOUSE et al. v. ROGERS et al.   (No. 7362.)***

Court of Civil Appeals of Texas. Austin.
Nov. 20, 1929.

Rehearing by Appellants Denied Dec. 11, 1929.
Rehearing by Appellees Denied Dec. 11, 1929.

E. A. Camp, of Rockdale, Wilcox & Graves, of Georgetown, and Henderson, Kidd & Henderson, of Cameron, for appellants.

M. G. Cox, of Cameron, and Neff, Hale & Neff, of Waco, for appellees.

McCLENDON, C. J. This is a companion case to that of Porter v. Rogers (Tex. Civ. App.) 293 S. W. 577, 580, in which a parol trust was established upon lands conveyed by W. S. G. Wilson to his wife, Lizzie B. Wilson, in 1884. Mr. and Mrs. Wilson were childless, and each had five brothers and sisters. The deed conveyed all the real estate at the time belonging to Mr. Wilson, separately or to the community; and the trust asserted and established in that, case was in substance that the consideration for the deed was that if Mrs. Wilson survived Mr. Wilson the deeded property should at her death be divided equally between the Wilson and Ledbetter (Mrs. Wilson's) brothers and sisters, or their descendants. Mr. Wilson died in 1896, and Mrs. Wilson in January, 1921. The will of the latter devised all her property by various special bequests, and a residuary clause in favor of Southwestern University. Some 900 acres of land acquired by Mrs. Wilson subsequently to the 1884 deed was left in trust for the Wilson kin. Jeff T. Kemp was made independent executor. The land involved in the Porter suit had been conveyed by Mrs. Wilson two or three years before her death to two of her sisters, and was not

mentioned in her will. Kemp as executor was made a party to the Porter suit, but it does not appear that any relief was sought against him, and he did not appeal from the judgment. The plaintiffs in the Porter and in the instant suit are two daughters of a brother of Mr. Wilson. There were three children of this brother, a son, Dee Wilson, in addition to the two daughters, who survived Mrs. Wilson a short time and died intestate and without issue; plaintiffs being his sole heirs at law. In the present suit the defendants are House and wife, who were devised 612 acres of land by Mrs. Wilson; the Southwestern University, the residuary legatee; and Kemp, the executor.

The case was tried to a jury upon special issues, and the verdict found:

1. That "prior to or at the time of the execution of the deed of May 17, 1884, from W. S. G. Wilson to Lizzie B. Wilson," it was "agreed by and between them as a consideration for the same, that she should hold the property therein conveyed for her own life, and upon her death should leave one-half of said property to the five brothers and sisters of the said W. S. G. Wilson, or their heirs at law, and the other one-half thereof to the five brothers and sisters of the said Lizzie B. Wilson, or their heirs at law."

2. That the reasonable market value on January 2, 1921 (the date of Mrs. Wilson's death), of the lands then held by Lizzie B. Wilson, which were conveyed to her by the deed of May 17, 1884, was $167,375; and

3. That the reasonable market value of all of her "land and real estate" at the time of her death was $400,000.

Upon this verdict the trial court entered judgment, establishing the trust and awarding plaintiffs a one-tenth interest in the 612 acres devised to the Houses, and denying recovery against the executor and Southwestern University.

Both the Houses and the plaintiffs below have appealed. For convenience we will refer to the Houses as appellants and the plaintiffs below as appellees.

The propositions urged by appellants may be reduced to the following:

1. That the evidence tested by the rule that it must be clear and satisfactory was insufficient, both as a matter of law and factually, to establish the trust.

2. That the evidence does not support the finding that the land devised to the Houses was a part of the trust estate.

█ 3. That a certain unsigned·will of Mrs. Wilson was inadmissible. Parenthetically, it might be stated at this point that this issue was raised and thoroughly considered in the Porter Case, and upon the authority of that case we overrule this contention.

4. That testimony of plaintiff, Mrs. Willie Rogers, to conversations and transactions between Mr. and Mrs. Wilson, was inadmissible under Rev. St. 1925, art. 3716.

5. That statements made by Mr. Wilson

after he executed the deed were not admissible to prove the trust.

6. That certain testimony in the Porter case was not admissible in the case at bar.

7. That plaintiffs were barred from asserting the trust or in any event to the extent of the interest of their brother Dee Wilson, because they accepted the bequest to Dee Wilson, and thereby elected to ratify the will.

Appellees assert substantially:

1. That they were entitled to a decree establishing and enforcing their right as superior in equity to the title and interest of:

A. The Houses in 312 acres (the unsold balance of the original 612 acres), to the extent, (a) of $40,000 (one-tenth of the value of Mrs. Wilson's landed estate); or (b) $16,737.-50 (one-tenth of the value of the trust property);

B. The same as to the Southwestern University 361 acres;

C. The same as to a certain 100-acre tract held by the executor under a bequest to the Methodist Orphanage at Waco.

2. That the judgment in the Porter Case was res judicata of the issues presented in the case at bar.

We will not observe the above order in passing upon these propositions.

The contention that the Porter judgment is res judicata of the case at bar (appellees' No. 2 above) we overrule on two grounds:

█ 1. Neither the Houses nor Southwestern University were parties to that suit. The land involved constituted no part of the estate. No relief appears to have been sought either in that case or in the case at bar binding the estate as such in any way. And under no tenable theory could a judgment against the executor in that case bind the Houses or Southwestern University in the instant case.

2. The only issue determined in that case which could materially affect the case at bar was the establishment of the trust; and since the instant judgment established the trust in substantially the same language as the Porter judgment, the ruling of the trial court upon the plea of res judicata becomes immaterial.

We overrule appellees' contention No. 1 C above on two grounds:

█ 1. Neither the bequest to the orphanage, nor the land set aside to satisfy it, was referred to in the pleadings. The executor seems to have been made a party simply for the purpose of a general decree establishing the trust, and there is nothing to show, either by allegation or prayer, that appellees were seeking satisfaction of their claims out of any property other than that conveyed to the Houses and Southwestern University. The real capacity in which the executor held this land was that of trustee, and to charge the property thus held by him, there should have been some allegation showing that appellees were seeking either to recover a specific interest therein or to subject it to the payment

of a claim. Since the executor's only duty in the matter was to sell the land and pay the proceeds to the orphanage, the latter should have been made a party to any suit vitally affecting its interest in the land or its proceeds. We cannot construe the pleadings as asserting any relief affecting the orphanage's interests.

2. As will be shown later, the orphanage land was no part of the trust estate.

Appellees' proposition No. 1 A and B, above, seems, as we gather from their brief, to be predicated upon a theory somewhat as follows: Mrs. Wilson having made specific devises of the trust property, the beneficiaries had the option, either of pursuing the trust property in the hands of the devisees, or of satisfying their claim for its value out of the unsold balance of the trust property held by the Houses and the land conveyed to the university as residuary legatee; the latter, in any event, since the specific devisees of trust property, would, in the event of recovery from them, have been entitled to reimbursement from the general estate.

Without passing upon the correctness of this theory, we will adopt it for the purpose of considering whether it is maintainable under the record here presented. As will be shown later, the land conveyed to the university was no part of the trust estate. It does not appear from the record whether the estate had been fully administered or whether the land conveyed to the university was all it would receive as residuary legatee. We quote in full the pleadings upon this phase of the case:

"That the defendant, Southwestern University was designated in the will of Lizzie B. Wilson, as aforesaid, as the residuary legatee, and the Southwestern University is now holding and claiming approximately 300 acres of land conveyed to it by Jeff Kemp, executor of the will and estate of Lizzie B. Wilson, deceased, which said deed was executed and delivered by the said Kemp in conformity with the terms and provisions of said will, and the property conveyed to the defendants, Southwestern University by said deed is a part of the W. S. G. Wilson trust estate, and the defendant, Southwestern University, is not entitled to receive or hold any of said property until the claims of these plaintiffs shall have been satisfied in full; then the said Southwestern University is entitled, as the residuary legatee, to hold such remainder as there may be on hand.

"(9) These plaintiffs say that neither of the defendants herein are innocent purchasers for value of the properties which they are claiming, but each of said defendants hold said properties under and by virtue of the purported will of Lizzie B. Wilson, and the property so held by each is subject to the rights of the plaintiffs with respect thereto, and in this connection it is alleged that the entire trust estate in question was, at the time of the death of Lizzie B. Wilson, of the reasonable market value of $500,000.00, and the plaintiffs are entitled to one-tenth thereof, and to this end plaintiffs sue to establish a parol trust upon all of the property described in the deed of 1884, as against the defendants John W. House, Pearl House, Jeff Kemp, executor, and Southwestern University, and for a partition of such property in conformity with the terms of the trust agreement, and in accordance with the principles of equity and if it should be found that any of the property bequeathed to the defendants, John W. House, Pearl House or Southwestern University, has passed into the hands of innocent purchasers for value, by reason of the act or acts of said defendants, and either of them, then in that event plaintiffs seek to have such conveyance charged against the property still remaining in the hands of such of said defendants, and that plaintiffs be allowed from the property remaining at this time in the hands and possession of the defendants, that portion thereof which is equal in value to their undivided one-tenth interest in all of the property that came into the hands and possession of said defendants, and after allowing a proper credit for the recovery that may be had herein against the defendants, John W. House and Pearl House, these plaintiffs seek to recover by partition such portion of the lands now held and claimed by the defendant, Southwestern University, as may be necessary to equal in value the sum of $50,000.00."

The prayer follows these specific allegations and also seeks general relief.

It is not entirely clear from this pleading that the latter alternative of this theory is presented. Rather it seems to be the theory of the pleading that the lands acquired by the Houses and the University were subject to the satisfaction of appellees' interest in the entire trust estate, by reason of the fact that these lands constituted a part of the trust estate. Such theory is altogether untenable. The courses open to appellees were either to pursue their interest in the specific property, or to assert their claim against the estate for its value.

Waiving, however, any question which may arise upon the pleadings, we think appellees have failed to establish a claim which could be asserted against the estate or the residuary legatee.

In order to establish such claim, the burden rested upon appellees to show the amount of the claim and have it established by the special issue verdict. There is no method by which the amount could be arrived at from the verdict. The only item in the verdict bearing on the issue is the third finding that the value of the entire trust estate was $167,375, from which must be deducted the value of the trust estate conveyed to the Houses. If the record shows this value, it is not pointed out in appellants' brief, and from

our reading of the record it was at least a disputed issue of fact. The statement of facts contains some 300 typewritten pages. There is a great deal of evidence, much of which is conflicting, on the subject of value; and it is impossible, as will be shown later, to identify from the evidence a large portion of the trust estate. Appellees' brief affords no aid or criterion by which we could with any degree of certainty fix an amount properly chargeable, under their theory, against the estate or the residuary legatee. There was no objection by appellee to the issues submitted to the jury and no requested issues by them upon this phase of the case. They did not object to the verdict but filed a motion for judgment thereon. In this motion they tendered to the court the judgment and only judgment they sought under the jury findings. This judgment decreed to them the unsold balance (312 acres) of the House lands and the university lands upon the specific finding that they were worth less than $40,000, one-tenth of the found value of Mrs. Wilson's entire estate. The trial court was not called upon in any manner to fix the amount of a claim against the estate or the residuary legatee. The motion for new trial (which constitutes appellees' assignments of error), in so far at least as it affects the university, does not complain of the judgment other than upon the theory contained in their motion for judgment.

Under this state of the record the trial court was fully justified in rendering judgment for the university, and appellees are not in position to complain of that judgment.

We will consider appellants' propositions in the order given above.

■ The first, stated in their brief (as are all of their propositions) in the abstract, is in substance that the rule requiring the evidence ingrafting a parol trust upon a deed to be clear and satisfactory is one of law, calling upon the court, in the first instance to determine whether it meets that test. This principle is now elementary in this state. See Carl v. Settegast (Tex. Com. App.) 237 S. W. 238, and cases therein cited and reviewed. In Briscoe v. Bright (Tex. Com. App.) 231 S. W. 1082, 1084, it was held that under this rule "it was only necessary to allege a valid contract sufficiently clear in its terms to enable the court to determine what those terms were, and that the contract proved be of like clearness." Tested by the rule invoked it was further said: "The evidence must be viewed most strongly in support of the trial court's judgment. The fact that the witnesses who testified may not have been disinterested, or may have made conflicting statements, or that their credibility may have been attacked, are matters with which it is not our province to deal."

A very large part of the statement of facts is taken up with testimony bearing upon the issue of the existence of the trust. We have

very carefully considered it, and we are quite clear in the view that it meets every test of the rule invoked, both as a matter of law and factually; that it is not only legally sufficient to support the judgment, but is not of that character as to invoke the powers of this court to set it aside in the interest of justice. The direct evidence upon the issue consists of statements of Mr. and Mrs. Wilson: (1) Of Mr. Wilson immediately preceding or at the time the deed was executed; (2) of Mr. Wilson, in the presence of Mrs. Wilson, after the deed was executed; and (3) of Mrs. Wilson after the deed was executed and both before and after Mr. Wilson's death. These statements, some of them taken alone, and all taken collectively, amply support (1) a contract between Mr. and Mrs. Wilson, (2) at and prior to the execution of the deed (3) in substantially the language, and expressly in the terms, of the jury's first finding. There is much corroborative evidence of a circumstantial nature, among which is the unsigned draft of will which must have been prepared after the 1884 deed and during the life of Mr. Wilson. This document disposes of the trust property in substantial accord with the found agreement, prefacing such disposition with the following: "At the death of my husband, W. S. G. Wilson, if he survives me, or of myself, if I should survive my husband, it is our mutual wish and I now will that our joint estates shall be divided as follows."

It would, we think, serve no useful purpose to set forth the several statements testified to or the circumstances which support the verdict; and to do so would require burdening this opinion by considerable extension. We overrule the assignments and propositions questioning the sufficiency of the evidence.

■ Appellants' second proposition above questions the sufficiency of the evidence as showing that the House lands were a part of the trust estate. These lands, as conveyed by the executor, consisted of two tracts: (1) 512 acres out of the Lewis survey, and (2) 100 acres, 19 in the Lewis and 81 in the Monroe. The 1884 deed conveyed 849 acres (in 4 tracts) out of the Lewis and an 800-acre tract out of the Monroe. None of the lands which the record shows were subsequently acquired by Mrs. Wilson were out of the Lewis, and we think the proof sufficient to support the finding that the Lewis survey lands were a part of the trust estate.

With reference to the 81 acres out of the Monroe the record shows: In 1885 Ford deeded to Mrs. Wilson an 800-acre tract out of the Monroe described to begin "at the N. E. corner of the Wilson home as the N. E. corner of this tract." This land was allotted and conveyed in 1876 by the executor of Margaret Wilson to Una and Emmie McLennan, and was referred to as "part of the old homestead of said Margaret Wilson, deceased."

With reference to this land Kemp testified: "I have testified to something about the 800

acres of land in the old Wilson home. That was property that belonged to the father of W. S. G. Wilson. I know about how old man Wilson acquired that 800 acres; I am somewhat interested in old local history and have made some investigation of that. He acquired that in 1840; he bought it from S. and S. Monroe and she signed by her mark. From practically 1840 to the time of Aunt Lizzie's death that land has stood in the name of the Wilsons, practically three quarters of a century, maybe the records will show that McLennan owned it, but that was within my knowledge; I cannot give you the date of Uncle Docks and Aunt Lizzie's marriage, but it was before the Civil War; I would guess about 58 years. I have heard that he was 40 and she was 20 at the time of their marriage, and of course he was 20 years older than she was as long as he lived. That old 800 acres was part of the estate I administered on; it was in that 2600 acres. The Orphan's home will get 100 acres of that and the Southwestern University 362 acres. * * * I know Pinkney S. Ford well in his life time. I knew the two minor children referred to in these instruments, *Emma* and Eula McLendon; Eula was a school mate of mine. I know that Judge Ford married Eula McLendon. I know the old Wilson place, the old W. R. Wilson; I testified to that. I am familiar with the land in the deed from Pinkney Ford to Lizzie B. Wilson and know where it is; as I testified yesterday I am not sure as to the line at Bear creek, but I know the location of that land. I am familiar with the location of the 361 acres of land devised to Southwestern University by Aunt Lizzie B. Wilson. That 361 acres of land devised to Southwestern University by Aunt Lizzie Wilson came out of this 800 acres conveyed to Aunt Lizzie Wilson by Pinkney S. Ford and wife by deed of 1885."

From these quotations it is clear that the university and orphanage lands are a part of the 800 acres acquired by Mrs. Wilson in 1885, and are therefore no part of the trust estate. If there is anything in the record by which it can be determined whether the 81 acres in the Monroe included in the House deed is a part of this 800 acres or a part of the trust estate, appellees have not pointed it out, and we have not discovered it. Appellants assert that the record does not clarify the matter, and the burden rested upon appellees to make the proof.

We sustain appellants' second proposition above to the extent only of the 81 acres in the Monroe.

■Appellants' fourth proposition above complains of the admission of testimony of plaintiff Mrs. Willie Rogers, detailing a conversation she heard between Mr. and Mrs. Wilson in the negotiations leading up to the 1884 deed, in which Mrs. Wilson is testified to have said, "I will see that your people get one-half." If any claim had been established against the estate or the executor as such, the testimony would clearly have been inadmissible under Rev. St. 1925, art. 3716.

The statute does not apply to suits against devisees, and therefore the objection was not well taken as to the suit against the Houses. Newton v. Newton, 77 Tex. 508, 14 S. W. 157; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89.

■Appellants' fifth proposition, above, complains of the admission of the following statement of Mr. Wilson, testified to have been made after the 1884 deed to the witness Charlie Swift: "Charlie, I turned over everything to Lizzie (Mrs. Lizzie B. Wilson) until her death, providing she outlives me, and at her death the property is to be divided equally between the Wilson-Ledbetter heirs."

The point made is that the trust could not be proved by statements of Mr. Wilson made after he had parted with his title. We overrule the contention because it appears from the testimony of the witness that Mrs. Wilson was present and added, "Yes, sir, that is the contract me and Uncle Dock (Mr. Wilson) agreed on provided I outlived him," and that "she said she was going to do what he said."

■Appellants' sixth proposition, above, complains of the admission in connection with his redirect examination of certain testimony of the witness Swift given in the Porter Case. Upon cross-examination appellees sought to show that the witness had given testimony in the Porter Case contradictory to some of his testimony in the present case. On redirect examination the witness was permitted to read certain portions of his testimony in the Porter Case, as indicating that he had not changed his testimony. These excerpts were substantially to the same effect as his testimony in this case, and we can see no harm in admitting them; especially so since the issue of his former testimony was injected into the case by appellants.

■We sustain appellants' seventh proposition to the extent of holding that appellees were barred by election in accepting the bequest to their deceased brother Dee Wilson, but overrule it as to the direct bequests to appellees.

Pertinent to this proposition, the record shows that the appellees Mesdames Rogers and Dee Wilson were the only children of a brother of W. S. G. Wilson. Mrs. Wilson set aside in her will about 900 acres of land, not a part of the trust estate, to be sold by trustees and the proceeds divided among the Wilsons. Dee Wilson survived Mrs. Wilson only a short time and made no election under the will. The Mesdames Rogers were his only heirs at law. By agreement of counsel it appears that the trustees under this devise had sold 600 acres of the land and the Mesdames Rogers had each received $1,455 from the proceeds, as the share of their deceased brother, and that Dee Wilson's interest in the unsold balance of this land was worth $670.83, which they would later receive. It thus ap-

pears that appellees have accepted under the will a bequest to their brother which will amount to $3,522.83. It might be noted in this connection that the share of Dee Wilson in the 900 acres was one-thirtieth and that the total value of the devise to the trustees was therefore $105,684.90, whereas the found value of the entire trust estate including the House devise was $167,375. We are clear in the view that the Mesdames Rogers could not accept the bequest to their brother and at the same time recover, as their brother's heirs, his interest in trust property which the same will that created the accepted bequest, devised to others. Under well-established principles appellees, as heirs of their brother, were put to an election, and are therefore barred from recovering his interest in the devised trust property.

Appellees contend that the holding in the Porter Case supports their right to recover their brother's interest here involved. In this view we do not concur. The land involved in that case had been alienated by Mrs. Wilson several years before her death. It formed no part of her estate and was not mentioned in her will. The holding in the Porter Case, as we construe the opinion, is predicated upon the fact that "the land involved in this [the Porter] controversy was not in any way disposed of by Mrs. Wilson in her will and no portion thereof was at any time claimed by the executor of her estate." Any expressions in the Porter opinion which would seem to give color to appellees' contention in this regard are clearly dicta.

■ The above holdings will necessitate a reduction in the recovery of appellees from one-tenth to one-fifteenth, and a reversal of the judgment to the extent of the interest decreed them in the 81 acres in the Monroe. This latter, however, should not, we think, require disturbing the verdict or judgment establishing the trust. It seems to us that this is an appropriate case in which to apply that portion of Court of Civil Appeals Rule 62a providing that, "if it appears to the Court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error." It will probably be a very simple matter to show indisputably whether the 81 acres was a part of the trust estate.

The judgment of the trial court (1) as affecting the Southwestern University, the Methodist Orphanage 100 acres, and the executor is affirmed; and (2) in decreeing in the Mesdames Rogers a one-tenth interest in that portion of the 612 acres devised to the Houses included in the Lewis survey is modified so as to reduce the interest so decreed from one-tenth to one-fifteenth interest therein. That portion of the trial court's judgment decreeing in the Mesdames Rogers a one-tenth interest in the 81 acres of the House lands includ-

ed in the Monroe survey is set aside, and the cause in that regard is remanded to the trial court with instructions to ascertain whether said 81 acres is a part of the trust estate, and upon such finding to enter decree in accordance with the holdings in this opinion.

Affirmed in part, and in part reversed and remanded with instructions.

### On Appellees' Motion for Rehearing.

Appellees attack our finding that their brief affords no aid or criterion by which the amount of their claim against the estate could with any degree of certainty be fixed; asserting that House, the only witness on the subject, testified that the lands devised to himself and wife were worth $35 or $40 per acre. Accepting this statement, the amount of the claim is still left as an issuable fact.

The motion strenuously insists: First, that appellees' equity is superior to that of the Houses, and the latter should not be permitted to retain any portion of the 312 acres until their claim is satisfied; and, second, the same with reference to the university as residuary legatee.

As we endeavored to point out in our original opinion, the trust asserted, proved, and found by the jury established a title in appellees to a one-fifteenth undivided interest in the land conveyed in the 1884 deed, and they had the option either of recovering this interest from those to whom the land had been conveyed or devised, or making claim against the estate for its value. In so far as the Houses are concerned, appellees elected to recover the specific property, and, of course, are confined to the specific interest they have therein, namely, one-fifteenth. They could not charge the Houses' property generally with a claim against the estate as for conversion of their interest in other portions of the trust estate merely because the property devised to the Houses was a part of the trust estate.

■ In so far as the university is concerned, its property being no part of the trust estate, it could be held only as residuary legatee upon a claim established against the estate for some specific amount. As we stated in our original opinion, we doubt whether this theory was presented by the pleadings. We are clear in the view that this was not the theory upon which the case was tried in the lower court. "It is an established principle of appellate procedure that the parties are restricted to the theory on which the case was tried in the lower court." 3 Texas Jurisprudence, § 111. No issue was submitted to the jury; no findings were requested by the court; and no judgment prayed for based upon the theory that appellees were seeking to establish a claim against the estate or against the residuary legatee. The judgment prepared and asked for in the trial court was that the Houses' 312 acres and the university's 361 acres be decreed to them because they aggre-

gated less in value than $40,000, or one-tenth of Mrs. Wilson's entire landed estate at the time of her death. Upon what theory appellees seek a one-tenth interest in Mrs. Wilson's entire landed estate we are unable to conceive. The trust pleaded, proved, and found by the jury was limited to the lands embraced in the 1884 deed. Appellees have recovered their interest in a large portion of those lands that were conveyed to Mrs. Wilson's sisters before her death, and there is no assertion of any claim for any other lands of the trust estate alienated by Mrs. Wilson except by her will. At the time of Mrs. Wilson's death the jury found that the trust estate still held by her is worth $167,357; appellees' one-fifteenth interest therein amounted to $11,151.67. In order to determine their claim against the estate, they having elected to recover from the Houses, the amount of that recovery must be deducted from their total interest, and in order to be deducted it must be definitely fixed. This cannot be done for two reasons: First, because the evidence does not definitely fix the value of the entire House property; and, second, because it is still an open question whether the House 81 acres in the Monroe is a part of the trust estate. Nor was the trial court requested to make a finding or enter judgment based upon the theory of a claim against the estate. The sole theory upon which a judgment was requested in the trial court was that of a general equitable interest in the trust property to the extent of $40,000, and the right to a decree vesting in appellees the House and university lands, because they did not equal in value $40,000. Manifestly, appellees were not entitled to such judgment, or to any judgment vesting in them the entire title either to the House lands or to the university lands; and since no other decree was sought and the assignments of error are predicated upon the refusal to enter such decree, we think clearly, as stated in our original opinion, that the trial court was fully justified in entering the judgment he did enter; that appellees are not in a position to complain of that judgment; and that they cannot rightfully seek relief in this court upon an entirely different theory of recovery.

The motion is overruled.

Overruled.