DYESS et al. v. ROWE. (No. 5474.)†

(Court of Civil Appeals of Texas. San Antonio. May 19, 1915. Rehearing Denied June 23, 1915.)

1. SPECIFIC PERFORMANCE ⊂∞86—CONTRACT—ACTIONS.

Where deceased breached a contract to make a will in consideration of services, suit may be maintained either for specific performance or on a quantum meruit.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 223, 224; Dec. Dig. ⊂∞ 86.]

2. LIMITATION OF ACTIONS ⊂∞46—RUNNING OF STATUTE.

Limitations against actions on contracts to make a will in return for services begin to run from the death of the person for whom the services are rendered.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240–253; Dec. Dig. ⊂∞ 46.]

**3. WILLS ⬙68—CONTRACT TO MAKE.**

A contract to make a bequest in return for services may be either express or implied; but, where an implied contract is relied on, it must be alleged and proven, since a mere expectation of remuneration by a bequest, unless induced by the actions or language of the person benefited by services, is insufficient to show contract to make a bequest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 178–182; Dec. Dig. ⬙68.]

**4. WILLS ⬙68—AGREEMENTS TO MAKE—ACTIONS.**

In a suit for breach of an agreement to make a will in plaintiff's favor, recovery can be had only on an express contract, where such contract was alleged.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 178–182; Dec. Dig. ⬙68.]

**5. HUSBAND AND WIFE ⬙80—CONTRACTS OF WIFE.**

An agreement by a feme covert to make a bequest in favor of another is not binding on her, unless ratified by her after she became discovert.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 327–330; Dec. Dig. ⬙80.]

**6. WILLS ⬙58 — CONTRACTS TO MAKE — ACTIONS—EVIDENCE.**

An agreement to make a will in return for services must be fully and satisfactorily proved.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. ⬙58.]

**7. WILLS ⬙58—AGREEMENTS TO MAKE—EVIDENCE—SUFFICIENCY.**

In an action for breach of an agreement to make a will in claimant's favor, evidence *held* insufficient to establish any agreement under which claimant rendered services.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. ⬙58.]

Appeal from District Court, Wharton County; Samuel J. Styles, Judge.

Claim by S. P. Rowe against the estate of Mrs. Josephine Rowe. It was approved in the county court, and Sydney P. Hill appealed. Pending appeal he assigned his interest to H. A. Cline and another. From a judgment of the district court granting the allowance, the assignees appeal. Reversed and rendered.

Durrett & Dyess and Edmund Heinsohn, all of Temple, and H. A. Cline and John A. Barclay, both of Wharton, for appellants. D. F. Rowe, Leonard Doughty, and John A. Ballowe, all of Houston, and G. G. Kelley and W. L. Hall, both of Wharton, for appellee.

FLY, C. J. Appellee sought to prove a claim for $7,000 against the estate of Mrs. Josephine Rowe, whose estate was being administered by appellee. He alleged in his petition to the county court:

That John T. Rowe was the husband of Josephine B. Rowe, and uncle of appellee; that for years John T. and Josephine were invalids; that appellee, at their special request, took charge of their business and conducted the same for them "and gave them every attention required by them for their personal comfort; that he and his wife waited on and served the two old persons for years and received no compensation for the same, but, in consideration therefor, John T. Rowe and wife promised and agreed

that whichever survived were going to devise to claimant their property as aforesaid, and, in expectancy of such bequest, claimant proceeded as aforesaid, and did and performed the services as aforesaid, among many more not herein alleged, these allegations being merely partial, and made for the purpose of partially elucidating the account aforesaid."

Again it was alleged:

"And claimant shows that it was the intention of said John T. Rowe and wife or the survivor to devise same to claimant, and it was agreed and understood by and between them that at their death the said property should belong to claimant in consideration of his and his wife's said services and others, as aforesaid; and the said John T. Rowe made a will to his wife, bequeathing to her his total interest in all their property, all of which was community property (so that in law the same would have descended to her exactly as devised had said John T. Rowe died intestate; they having no children or descendants thereof), but with the understanding that the survivor should will said property to claimant."

It was also alleged that John T. Rowe died on July 10, 1912, and Mrs. Josephine B. Rowe died about two months thereafter; that after the death of her husband Mrs. Rowe ratified the agreement to devise the property to appellee, but was prevented from so doing by a relative who would inherit from her if no will was made.

The evidence shows that John T. Rowe and his wife each made to the other a will bequeathing each to the other all their property. He died first, and of course all of the property became that of the surviving wife. She died without making another will, and, having no children, the property, on her death, passed to her nearest of kin, a nephew and two nieces. Appellee bought the interest of the two nieces and opened up administration on the property. Sydney P. Hill, the nephew, inherited one-half of the estate. The claim was approved in the county court, and Hill appealed, and pending the appeal sold all of his interest in the estate to H. A. Cline, except the portion theretofore assigned to A. D. Dyess for his legal services. In the district court judgment was rendered in favor of appellee for $3,000, and from that judgment this appeal has been perfected.

[1, 2] The right to sue on a contract to bequeath property is conceded, and the suit may be one of specific performance, or on a quantum meruit for the services performed for the deceased person. Limitation against such contracts would begin to run the date of the death of the person with whom the contract was made and for whom the services were performed. Borland, Wills and Administration, p. 26 et seq.; Mod. Law Cont. § 650; Wyche v. Clapp, 43 Tex. 543; Stevens v. Lee, 70 Tex. 279, 8 S. W. 40; Jordan v. Abney, 97 Tex. 296, 78 S. W. 486; Raycraft v. Johnston, 41 Tex. Civ. App. 466, 93 S. W. 237; Waddell v. Waddell (Tenn.) 42 S. W. 46; Clark v. West, 96 Tex. 437, 73 S. W. 797; Von Carlowitz v. Bernstein, 28 Tex. Civ. App. 8, 66 S. W. 464.

⬙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[3] The contract to bequeath may be express or implied, as in the case of other contracts; but, in case of an implied contract to bequeath (that is, where the circumstances manifest an understanding by both parties that compensation will be made by will for services rendered), such contract must be alleged and proved. Mere expectation of remuneration by a bequest, unless superinduced by the conduct, actions, or language of the person benefited by the services, is insufficient, and the services will be deemed voluntary and gratuitous. The rules of law applicable to the subject of contracts generally apply to agreements to devise or bequeath property.

[4, 5] In this case an express contract to bequeath the estate to appellee was alleged, and it could be sustained only by evidence of an express contract. Shiner v. Abbey, 77 Tex. 1, 13 S. W. 613. The express contract must have been made by Mrs. Rowe after the death of her husband, for the contract made by her, if any, was made while she was a feme covert and would not bind her, and as intimated in Jordan v. Abney, hereinbefore cited, the mere continuance after the husband's death of pre-existing conditions would not constitute it a contract on her part. It follows that Mrs. Rowe could not be bound by any contract, unless it was made after the death of her husband.

[6] It is a delicate matter to allow a contract of the character of the one under consideration to prevail, for the dead man cannot tell about the affair, and the testimony obtained is usually in favor of the living, for the latter are usually the prime favorites as against those whose tongues are closed in death. Such being the condition of affairs when such a contract is made the basis of a recovery, it must be fully and satisfactorily proved.

[7] The evidence fails to show an express contract on the part of John T. Rowe and Josephine B. Rowe to bequeath to appellee their property or any part thereof, as a review of the testimony will indicate. J. H. H. Dennis, a witness for appellee, testified that Mrs. Rowe, after her husband's death, told him that she wanted to give a part of her property to her niece and part to appellee. The witness was the attorney of John T. and Josephine B. Rowe, and often discussed their business affairs with them, and drew their wills to each other for them. Mrs. Rowe was undecided as to what disposition to make of her property after her husband's death. Mrs. Rowe never told Dennis that she had promised to leave the estate to appellee. He did not testify that he had communicated any of the narrated facts to appellee.

Dr. Andrews testified:

"I never heard them say who they were going to give all of their property to, but I have heard them say that Pinkney (appellee) was the only relative, and that he had lost lots of time and taken up lots of time, but that he would never lose anything for it; that he would be paid for it in the end; talked a great lot about it. They both said that. I heard them a great many times. The old lady repeated that, about two weeks before she died, to me. She asked me to get Pinkney to come down there and fill up a cistern and mow her yard, and she told me then, right on that day, that Pinkney would never lose anything. That was after the old man died. * * * She told me then she expected to pay Pinkney in the end."

There was not one word about a promise to devise her property to appellee. He testified further:

"I never heard them say they were going to leave their whole estate to anybody. I don't think I ever spoke to Pinkney Rowe about that thing in my life until after the old man's death."

P. G. Brooks testified that he had heard the old couple say that when they died they intended to give him all their property. He did not state that he ever communicated what they said to appellee.

Armstrong testified:

That the old couple told him they intended to leave appellee well "fixed." "I didn't hear them say as to whether they were going to leave all of the property to him or what portion of it. I don't remember telling Pinkney about these conversations; about what the old people had stated about their going to remember him. I never said anything to him about it."

Appellee did not swear that he had any contract with the Rowes in regard to the disposition of their property. He merely testified:

"In rendering these services, I expected to receive remuneration for it."

Evidence that the Rowes stated to third persons that they intended to leave their estate to appellee did not constitute a contract to so leave it, especially as such statements were never communicated to him.

In the case of Steele v. Steele, 161 Mo. 566, 61 S. W. 815, William Steele had taken the plaintiff into his family and reared him as a son and from time to time stated that he intended to leave plaintiff his property. This was held not to bind William Steele to bequeath his property to the plaintiff. The court adopted the following statement of plaintiff's counsel as a right conception of the law as applied to such cases:

"We are aware of the fact that in the trial of this case the burden rested on the plaintiff and it was his duty to present to the chancellor evidence so strong, cogent, and convincing as to remove and exclude every doubt that decedent made the contract; but such evidence may consist in the declaration and acts of decedent, with their attending circumstances."

In the Kentucky case of Gross v. Newman, 50 S. W. 530, a nephew of the decedent had taken the latter to his house and cared for him for eight years, and the nephew claimed that his uncle had agreed to pay him by a bequest. The court held that it would "not enforce such a contract between relatives, against the estate of a decedent, unless the proof is clear and decisive." In that case the nephew expected his uncle to bequeath a portion of the estate, and was justified in so

thinking by the declarations of decedent, "but," says the court, "it is by no means clear that the intestate obligated himself to make this disposition of his property, or that there was any agreement that this should be done in consideration of his board by appellant." The case is quite similar to this, and the language of the Kentucky court is peculiarly appropriate to this case.

In the case of Newton v. Field, 98 Ky. 186, 32 S. W. 623, it was testified by witnesses that a decedent had promised to remember the plaintiff in her will and promised to provide for plaintiff on account of services rendered by the latter, but the court held that the testimony was insufficient to establish a contract whereby the decedent had promised to make compensation in her will for such services. The court said:

"But the bare statement that she would be provided for or remembered in the will of testatrix will not justify the conclusion that testatrix made a contract by which she would make a devise equivalent in value for the services of the appellee, and, having failed to do so, the courts of the country should make provision for her out of the testatrix's estate. That appellee performed services for the decedent is not questioned, but, if entitled to remuneration, she should have amended her petition and asked for the value of her services upon a quantum meruit."

In this case, as in that, the evidence of declarations of the decedents as to what they intended to do as to remunerating appellee for his services did not constitute a contract to bequeath property to him.

In the Illinois case of Collar v. Patterson, 137 Ill. 403, 27 N. E. 604, the statements made by the decedent were much stronger than those sworn to in this case, and they were made in the presence of the plaintiff, and yet the court held:

"This evidence not only fails to show an acknowledgment on his part to pay a debt, but clearly shows that the deceased did not understand that any indebtedness existed in claimant's favor against him, in the sense of a legal liability."

So in this case the decedents only expressed their gratitude to appellee for his services and a desire to recompense him, but there was no admission of a contract to pay him through a will, or that there was any legal liability upon their part to pay a debt to appellee.

It must be kept in mind that appellee pleaded an express contract on the part of the decedents to bequeath property to him. There is not one item of testimony tending to show that any such contract was ever dreamed of by decedents. The most that can be obtained from the testimony is an implied contract to pay for services and was not pleaded, and, if it had been, a claim based on such a contract would be barred by limitations within two years. If there was only an implied contract to pay for the services, there could have been no contract to pay through a will, and limitations would begin to run from the time of performance of the services.

John T. Rowe and wife may have intended to bequeath their property to appellee, and he may have labored for them with the expectation; but, unless there was an express understanding and agreement between them that a will would be made in his favor to recompense him for his services, under the pleadings there could be no recovery. Appellant cites the case of Wright v. Wright, 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196, opinion by the Supreme Court of Michigan, to sustain the contention that, in a case where no certain kind of contract is declared upon, the claimant could recover on proof of an implied contract. That may be true, but no court has held that "a court of equity, of conscience, and of right" will permit recovery of a claim based on allegations of an express contract, upon proof of an implied contract. We know of no rule that would permit a court, when an appeal is made to its equity powers, to disregard the pleadings and ignore that old undisturbed rule that allegation and proof must correspond.

Appellee contends that "one of the highest powers of a court of equity, and which had more to do with bringing this character of jurisprudence into existence, is to see to the express carrying out of such contracts"; but, if this sweeping assertion could be taken as well founded, still in our zeal to enforce such contracts we should not lose sight of that salutary rule:

"But the evidence in all such cases should be clear, distinct, and positive. Where a claim of this kind is not asserted until after the alleged debtor's death, and particularly where it covers a long period of time, the staleness of the claim is calculated to awaken suspicion as to its validity; hence nothing but unequivocal evidence of its truth will satisfy the plainest demands of justice and good faith." Woerner, Am. Law Adm. pp. *824, 825.

There is evidence in this case strongly tending to show that appellee did not have any understanding with his uncle and aunt as to being remunerated for his services, for in 1909 he executed his promissory note to John T. Rowe for $1,000, payable in a year. That note was given after many years of the alleged services had been performed. The evidence also showed that appellee had sworn before the trial of this cause that his services were performed gratuitously, "just like a son would for a father."

The judgment is reversed, and judgment here rendered rejecting the claim of appellee.