## WALKER v. SCOTT et al.

### No. 13217.

Court of Civil Appeals of Texas. Dallas.
June 26, 1942.

Rehearing Denied Sept. 18, 1942.

J. W. Hassell and J. W. Hassell, Jr., both of Dallas, for appellant.

Webb & Webb, of Sherman, and Lively, Dougherty & Alexander, of Dallas, for appellees.

BOND, Chief Justice.

Appellant, in her amended petition on which this suit went to trial, pleaded: (1) Statutory trespass to try title; (2) an express parol contract by which A. E. Bower agreed to give appellant and her husband the real estate described in the petition, in consideration of personal services to be rendered by them, and for food to be furnished, cooked, prepared and served to Mr. Bower for and during his lifetime; and (3) if, for any reason, it be held that she is not entitled to have decreed to her the fee simple title to said property, or to require specific performance of the alleged contract, then, in the alternative, she alleged that she and her husband entered into a contract in parol with A. E. Bower, at his special instance and request, by which she and her husband agreed that they would at once move into his home; that they would furnish all food necessary for the support of the said A. E. Bower, prepare, and serve the same; and that they would do and perform all the household work of the said A. E. Bower, launder his clothes, bedding and linens, and perform all household services for him, incident to and in keeping with his mode and manner of living. It was further alleged that she and her husband performed all the acts contemplated by the agreement throughout the lifetime of A. E. Bower, and until his death, and in consequence, the estate became bound to pay the reasonable value of the services rendered, alleged to be the sum of $18,500.

The defendants interposed a plea of not guilty to plaintiff's action in trespass to try title; pleaded the statute of fraud to plaintiff's plea of specific performance of the alleged parol agreement to give or to sell the real estate to plaintiff in consideration of the services, etc., rendered; and pleaded the two-year statute of limitation particularly and specially as to all the years of service except the last two years of Bower's lifetime; pleaded special and general denial of all allegations in plaintiff's petition, and then alleged:

"That on or about December 20, 1924, said A. E. Bower agreed to permit plaintiff and her husband to move into and occupy said premises and to use the furniture and furnishings therein, in common with said A. E. Bower, and that said A. E. Bower further agreed to pay all charges and bills for water, lights, gas and local telephone service incurred on said premises, and further agreed that said plaintiff and her husband should not be required to pay rent for their use of said property; and that plaintiff and her husband, in consideration of the right to use and occupy said premises and the furniture and furnishings therein in common with said A. E. Bower, agreed to provide and furnish said A. E. Bower suitable meals and agreed to provide such laundry and household services as his needs and comfort should require; that pursuant to said agreement, plaintiff and her husband moved into said premises and occupied and used the same and the furnishings therein, in common with said A. E. Bower, until the latter's death; that during all of said time, said A. E. Bower faithfully performed his obligations under said agreement and permitted plaintiff and her husband to occupy said home and to use all furniture and furnishings therein, and said A. E. Bower paid all charges and bills for water, lights, gas and local telephone services incurred on said premises, and thereby provided plaintiff and her husband with a comfortable home, for which, pursuant to said agreement, he did not charge or receive any rent from plaintiff or her husband; that plaintiff and her husband did not perform for said A. E. Bower any services to which he was not entitled under said agreement, and they received from said A. E. Bower all they were entitled to under said agreement for all services rendered by them to him, and accepted the same in full satisfaction for services rendered by them to said A. E.

Bower, and they did not demand and said A. E. Bower did not agree to give, any other or further compensation or remuneration, and that said A. E. Bower did not receive or accept from plaintiff or her husband any services or other things of value for which he was bound or obligated. to pay plaintiff or her said husband."

The cause was submitted to a jury on three special issues; none other was requested or suggested by either party. The jury found, (1) that from the year 1924 to date of the death of A. E. Bower, the plaintiff, Neva Walker, and her husband rendered personal services as housekeeper and nurse to A. E. Bower, at his special instance and request; (2) that $7,500, separately listed for each year, was the reasonable value of such services for the 15 years, the last two years being $600 per year; and (3) that no such contract, in terms as alleged in defendant's answer (set out above), was made by the plaintiff·and A. E. Bower.

On motion of defendant, non obstante veredicto, the trial court disregarded the findings of the jury as to the value of the services rendered by plaintiff for the years 1925 to 1937, both inclusive, on the theory that plaintiff's cause of action hinged on an implied contract, hence the remuneration for services rendered to deceased for all years other than the last two, was barred by the two-year statute of limitation, and rendered judgment in favor of plaintiff for the sum of $1,200.

The right to sue on a parol contract to give or sell real estate must be conceded. Such suit may be one for specific performance, or in trespass to try title; or on quantum meruit for services performed. Our Statute (subd. 4, Art. 3995) does not declare such contract illegal or void; its validity is presumed, but the right to enforce same through judicial procedure is denied by the operation of the statute only when invoked by the party affected. In this case, the statute was invoked by the defendants, hence the parol agreement to give or sell the real estate in consideration of the services performed was obnoxious to the statute, and for that reason, plaintiff was denied the right to prove the consideration for, hence recover, the alleged real estate, and effectively eliminated such issue from consideration of the jury. However, the issues submitted to and determined by the jury were, we think, all essentials.

■ As we understand the law, if an agreement comes within the purview of the statute of frauds and the statute is invoked to deny plaintiff the right of performance of some part of it, by the affirmative act of the other party, after plaintiff has fully performed the obligations imposed upon him by the terms of such agreement, and the other party has received and enjoyed the benefits of such performance, the statute has no application to deprive the party who performs, of all remuneration for his services. The liability therefor is determined on quantum meruit.

■ It will be observed that plaintiff alleged a continuous, indivisible, express parol contract, contemplating personal services to be rendered by herself and husband for and during the lifetime of A. E. Bower, payable only at his death by gift of the real estate. In submission of the issues to the jury, the trial court evidently recognized that the contract was expressly made at the "special instance and request" of A. E. Bower; and that, due to defendant's plea of the statute of fraud, plaintiff could not recover the land in trespass to try title, or otherwise, hence the consideration was relegated to the reasonable value of the services rendered. The third question submitted evidently relates to an express agreement alleged by the defendant, and which has support in the evidence, contradicted by that of the plaintiff. Thus, the ultimate issues of fact having been determined in favor of plaintiff, on the theory of an express parol contract, continuous and indivisible, limitation against such contract would not begin until the death of the person with whom the contract was made, and for whom the services were performed. The trial court therefore was without authority to disregard the findings of the jury. This brings us to a consideration of the evidence to sustain the findings of the jury on the first two issues:

■ The rule seems to be well settled that where persons, especially where related by blood or marriage, as in this case, are living together as one household, personal services performed for each other are presumed to be gratuitous. A remuneration for such services must be shown by an express contract, or circumstances must exist to satisfactorily show a reasonable and proper expectation or mutual intention that there would be compensation. Such evidence must show a mutual understanding of the parties; no presumption or inferences may be indulged. The petition presents and the charge of the court submits an offer on the part of Bower, and its acceptance by plaintiff and her husband. In absence of specific evidence of the provisions of the contract, which the law would not permit plaintiff to relate, the status of the parties thereto, its terms and conditions may be ascertained by circumstances, and where one party imposes a duty upon another, he impliedly agrees not to defeat or make impossible the performance of that duty by any affirmative act of his own; and it might well be said that where the circumstances are such that they dispel the thought that the duties imposed and the services rendered were gratuitous, the law implies remuneration, and where remuneration agreed upon cannot be proved, or is defeated by affirmative acts of the party for whom the services were rendered, such obligation shall be paid in money quantum meruit.

There was no break in the continuity of the contract pleaded by plaintiff and submitted by the court; plaintiff performed the services alleged, making no demand upon Mr. Bower for payment. The testimony is that Mrs. Walker did all the household work, cleaning, and keeping Mr. Bower's clothes; preparing his meals, and attending all his wants. During the last years of Mr. Bower's life, he lost control of his bodily functions, saturated his clothing, bedding, floors and rugs with the offgivings of his body, which were cleansed by Mrs. Walker—she took care of that condition. Mr. Bower was confined to his bed; she administered to his urinary and bowel movements several times during a day; and, as he expressed it to several witnesses, "Neva treated me like a baby."

■ The evidence, we think, is replete that the deceased was in need of the services of a housekeeper and nurse. His wife had died suddenly; his home was childless, empty; the aged man was left alone, disconsolate, and needed the services of someone. Plaintiff and her husband were comfortably situated in a home in Oak Cliff section of Dallas, some distance from the home of Mr. Bower. Both were gainfully employed; Mrs. Walker earning $66 per month in pleasing environment, clean and pleasant work. On the Sunday morning (the day following the funeral of Mrs. Bower), Mrs. Walker received a telephone call; she was not permitted under the ruling of the court to say from whom and

from whence it came, or to detail the conversation. Anyway, she went at once to the home of the deceased, and never, as she expressed it, returned to her own home to live. She moved her furniture to the Bower home, and sold some of Mr. Bower's furniture to make a place for her own. She gave up her employment and took up the service of housekeeper and nurse for Mr. Bower—drudgery, revolting in the sense of cleanliness and respectability—and continued such services for more than fifteen years, until Mr. Bower's death. But aside from this, we think an agreement is established beyond any question by the words of Mr. Bower himself. His statements, shown by so many witnesses, give form and substance to the circumstances under which Mrs. Walker went into the Bower home, breaking up her own household, surrendering her gainful employment, giving up her pleasant environment, and performing the drudging duties for Mr. Bower for more than fifteen years; Margaret Slaughter testified that Mr. Bower told her soon after his wife's death that Will and Neva had agreed to come and make a home for him; that the furnishings in the house were Neva's, to do with as she saw fit; that he, Will and Neva had come to an understanding—that if they would come there and make a home for him, the house would be theirs; he would give it to them. Mrs. Julia Germany testified that Mr. Bower said to her: "You know there isn't anybody to contest what little I have when I pass on, and Neva knows that"; and then she asked him if the arrangement the Walkers had worked out satisfactorily, to which he said: "Yes, I couldn't have done better." Mrs. Treadwell testified to a conversation with Mr. Bower just after Mr. and Mrs. Walker moved into his home, in which he said: "Well, I have at last a housekeeper; I have begged Will and Neva, Mr. and Mrs. Walker, to come and live with me. * * * They didn't want to break up; and finally I went after them; I brought them here. I told them if they would come and make me a home and take care of me, they could have the whole thing at my death"; and that he then "turned around and made a gesture like this (indicating) and pointed at his home." Mrs. Langston testified that Mr. Bower had, on numerous occasions, told her he had offered Mr. and Mrs. Walker the real estate he owned if they would come and make him a home. He referred several times to the fact that he had given the property to Mrs. Walker. Mrs. Venner testified that Mr. Bower told her that Mrs. Walker was so good to him that she never would regret it; that he was going to give her the home and the apartment on the back of the lot; he just said that Mrs. Walker was so good to him, and all, and under the arrangement she was going to take care of him and he was going to leave her this home and the apartment on the back of the place. Mrs. Erna Mackey testified that Mr. Bower told her that he was having plaintiff move out to the house to take care of the place; that the house would be hers if she would take care of him and the place; that this conversation was after Mrs. Walker quit the store to go out there and take charge. Mrs. Edith Youngblood was told by Mr. Bower: "I am not any nicer to her (Mrs. Walker) than she is to me. She treats me like a baby and she won't lose by it. She will have the home place and will be taken care of." Defendant Scott testified for the defendants; he said: "Uncle Joe (Mr. Bower) stated to me several times when we were discussing his affairs, that when Mr. and Mrs. Walker came there (to his home), he made an arrangement with them that he would furnish the home, pay all the utilities, keep the home in good condition; and that they were to furnish the groceries, keep the house and the laundry. He didn't tell of any other or different arrangement." However, Mr. Scott did testify that he was surprised at the provision of Mr. Bower's will undertaking to give the property to someone else. He said he knew that Mrs. Walker had been living on the property and treating it as her home for many years—knew all about the arrangement. He had a conversation with Uncle Joe, and after this, when the will was opened and he found she was not given the property, he was surprised and so expressed himself.

It will be seen that there is no issue as to the making of a contract of some character between the Walkers and Mr. Bower. Plaintiff's pleadings declare upon an express contract, and the defendants declare upon practically the same contract, differing only in the consideration to be paid. True indeed, such contracts cannot be established by declarations of one party thereto, made to outside third parties, without bringing notice of such declarations to the other contracting party; and while none of the statements credited to the de-

ceased are shown to have been related to the plaintiff, yet, we think, the circumstances revealed tended strongly to show that such contract was mutually understood and agreed to by the parties. The circumstances, as well as the direct statements of Mr. Bower, indicate an entire and indivisible contract, not gratuitous, hence compensable. The law considers such evidence in determining the nature of the contract, and the jury having determined the issue, we think the trial court erred in disregarding the verdict and rendering judgment for compensation for the last two years of Mr. Bower's life only; judgment should have been rendered for the full amount as determined by the verdict. Accordingly, the judgment of the court below is reformed and judgment here rendered for plaintiff for the sum of $7,-500, with interest thereon until paid, against the defendant Harry D. Scott, as independent executor of the will and estate of A. E. Bower, deceased.

Reformed, and as reformed, affirmed.

YOUNG, Justice (dissenting on rehearing).

I have concluded upon reconsideration of this cause, that the judgment under review should be affirmed; the trial court simply holding that all jury findings of reasonable value concerning appellant's services prior to the years 1938 and 1939 were of no effect, because barred by the two-year statute of limitations.

The high frequency of litigation involving oral agreements to devise real property in consideration of personal services is illustrated by more than 200 pages of annotations following Andrews v. Aikens, Idaho, 69 A.L.R. 8; the usual remedy pursued in such cases being (1), for specific performance, where permissible under existing law; (2) suits for reasonable value of the services rendered; or (3) damages for breach of the particular contract. In Texas, the statute of frauds intervening to deny specific performance of the oral contract to devise, the relief uniformly afforded is by an action in quantum meruit; the law substituting a valid promise to pay reasonable compensation for the void remedy of specific performance; Raycraft v. Johnston, 41 Tex.Civ.App. 466, 93 S.W. 237, writ refused. The testamentary agreement is material and must be established, however, to rebut the presumption that the services were rendered gratuitously, and that there was no contract breach until the promisor's death; hence, not affected by the bar of limitations.

The customary method of submission in such cases is shown in Moore v. Rice, Tex. Civ.App., 110 S.W.2d 973, 975, where the first issue determined was the oral agreement of deceased, T. M. Jones, to devise realty, in which connection the court stated: "We understand the true rule to be, as applied to the facts disclosed by the record, that plaintiff may recover, if at all, only upon a suit for the reasonable value of services rendered to deceased, and that he cannot recover upon the contract alleged whereby Jones agreed, in consideration of Rice's services, to devise and bequeath to Rice whatever property he might possess at the time of his death, the statute of frauds being interposed as a defense. The cause of action asserted by the third count is not a suit based upon such contract, but said contract we think, may be proved to show (1) that the services of Rice were not intended to be gratuitously rendered, and (2) to show that the cause of action asserted under the third count, which is a suit for the reasonable value of the services rendered by Rice to Jones, is not barred by limitation."

In all the various decisions on the subject, the express agreement of testamentary intention was established as a prerequisite to an implied obligation to pay compensation for the entire period of the services; and, in this record, said primary finding was not made either by court or jury. Absent any specific contract to pay through a will, plaintiff's pleading (paragraph 6), and issues 1 and 2, that services were rendered and the value thereof, are referable only to an implied agreement to pay therefor, against which limitation would run from the time of their performance. Ivey v. Lane, Tex.Civ.App., 225 S.W. 61, writ refused; McFaddin v. Trahan, Tex.Civ. App., 80 S.W.2d 492.

It is, of course, the position of counsel that Mr. Bower's agreement to bestow the property by will was an undisputed fact of record; notwithstanding the uniform holdings of Texas courts that "Such contracts are looked upon with suspicion, and are only sustained when established by the clearest and strongest evidence." Mulkey v. Allen, Tex.Com.App., 36 S.W.2d 198, 203. "The courts have been disposed to require more satisfactory evidence to establish agreements of this character than is

usually accepted as proof sufficient of contracts generally"; Henderson v. Davis, Tex.Civ.App., 191 S.W. 358, 361. "Such contracts are viewed with great caution and can only be established by full and satisfactory proof, *and no presumptions or inferences will be indulged in favor of them.*" Ivey v. Lane, supra [225 S.W. 62]. (Italics mine.) See, also, Dyess v. Rowe, Tex. Civ.App., 177 S.W. 1001, writ refused. In this case, the agreement to devise was specifically denied, followed by pleading and evidence on part of defendants that the oral understanding in fact was as reflected in issue 3 of the charge, same being that plaintiffs were to occupy the house jointly with decedent, the latter to pay all utility bills, no rent to be required in consideration of furnishing Mr. Bower with meals, laundry and household services. Though the jury answered "no" to aforesaid defensive issue 3, yet the arrangement plead by defendant was not one to run for the entire lifetime of one party, but, on the other hand, was an agreement terminable at will. The agreement to devise, relied upon by plaintiff, cannot be regarded as an undisputed fact, and not being submitted as an issue, nor requested, it effectually passed out of the case as an element of her cause of action. Any issue on paragraph 3 of the petition (agreement to devise) having been eliminated by the court's manner of submission (not objected to), plaintiff has obviously elected to stand on issues raised by her paragraph 6 (an alternative count alleging rendition of services at defendant's instance and request). And to escape the bar of limitation under this independent count, seeking to establish an express agreement for remuneration, it was plaintiff's further burden to prove a mutual understanding for compensation, payable at promisor's death. No issue was requested by plaintiff, inquiring as to whether the oral contract of paragraph 6 was entire, continuous and thereby not terminable until death of Mr. Bower.

In short, it is my conclusion that the issue of an agreement to devise, not submitted, has been waived; and, in light of defensive pleading and proof, cannot be considered as an undisputed fact on which to base an entirely different contract for money compensation, to continue during obligor's lifetime. It was plaintiff's duty to affirmatively establish that the independent oral contract alleged in paragraph 6 was *so payable,* in order to void the bar of limitation, and this she has not done. It is elementary that a party must prove every material element on which he relies for recovery; and, having asserted the affirmative of an issue, which is denied, he must establish it. To summarize: Plaintiff not having based her claim on an oral agreement to devise; and the defensive admissions being wholly insufficient to support her contention of an entire and continuing oral agreement, she is compelled in law to establish that the rendition of services for money compensation was to continue during the lifetime of Mr. Bower. In lieu of the finding just referred to, the gist of plaintiff's case is an implied obligation to pay for services rendered—obviously, a situation to which the two-year statute of limitations is applicable. Dyess v. Rowe, supra.